# CASES ADJUDGED IN THE UNITED STATES COURT OF CUSTOMS APPEALS.

HANSEN v. UNITED STATES (No. 18). WEBER v. UNITED STATES (No. 123).[1]

STURGEON ROE "PREPARED FOR PRESERVATION" NOT "PRESERVED."

Fresh roe of the sturgeon rubbed through a sieve, dropping thence into a solution of brine, the brine drawn off and the roe packed for shipment in tins and transported in a refrigerated state, does not constitute "fish roe preserved for food purposes," as excepted by paragraph 549, tariff act of 1897, and was not dutiable under paragraphs 258 and 261 of said act, but as eggs of fish under paragraph 549.

United States Court of Customs Appeals, June 22, 1910.

APPEALS from Circuit Court of the United States for Southern District of New York (T. D. 29914).

[Reversed.]

*John Giblon Duffy* (*Joseph G. Kammerlohr* of counsel), for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Charles D. Baker* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

These are appeals from the Circuit Court of the United States for the Southern District of New York. The decision of the circuit court affirmed the decision of the Board of United States General Appraisers, G. A. 6922 (T. D. 29914), which had affirmed the assessment of duty by the collector of customs at the port of New York on goods imported by the appellants. The goods consisted of so-called "fresh caviar." The importations were in part in barrels and in part in tins. The barrels contained about 100 pounds each, whilst the tins were in from 1 to 3 pound packages. The collector imposed a duty upon the merchandise in the barrels at the rate of three-fourths of 1 cent per pound under the provisions of paragraph 261 of the tariff act of 1897, and upon the caviar in tins at the rate of 30 per cent ad valorem under the provisions of paragraph 258 of the same act. The pertinent provisions of said paragraphs are as follows:

258. Fish * * *. All other fish (except shellfish), in tin packages, thirty per centum ad valorem; * * *

261. Fish, fresh, smoked, dried, salted, pickled, frozen, packed in ice or otherwise prepared for preservation, not specially provided for in this act, three-fourths of one cent per pound; * * *

[1] Reported in T. D. 30769 (19 Treas. Dec., 765).

Counsel for the Government maintained that while the merchandise was not directly dutiable under the provisions of either of the quoted paragraphs, nevertheless it was properly dutiable thereunder by virtue of the similitude clause and the familiar provisions of section 7 of the tariff act of 1897. Counsel for the importer, among other things which are deemed unimportant, claim that the merchandise was entitled to free entry under the provisions of paragraph 549, free list of the tariff act of 1897, which, in so far as pertinent, reads:

549. Eggs of birds, fish, and insects: *Provided, however,* That this shall not be held to include  *  *  *  fish roe preserved for food purposes.

The Board of General Appraisers affirmed the assessment of duty by the collector, and the Circuit Court for the Southern District of New York affirmed the decision of the board. The board found upon the facts that the merchandise was "fish roe preserved for food purposes," and that it was therefore excluded from the provisions of paragraph 549 by reason of the exception thereto quoted. Much testimony was introduced at the hearing, so that the production, preparation, and methods of treating the roe from the time it is taken from the fish abroad until the time it reaches and is served upon the table in this country is fully developed. The record presents no controversy as to the facts of the case, and in that view the question for determination by this court is essentially one of law, upon an agreed statement of facts, as to whether or not the undisputed condition and treatment of this merchandise brings it within the terms of paragraph 549 of the free list of the tariff act of 1897, or requires that it be excluded therefrom perforce the proviso thereto and held dutiable under the pertinent provisions of paragraphs 261 and 258, respectively.

It appears from the record that the merchandise is made from the roe of the sturgeon. In the particular case the sturgeon were taken from the Caspian Sea; they were then cut open, the roe taken out and cut into so-called blocks. Thereupon these blocks of roe were rubbed in a sieve, so as to separate the individual fish eggs one from the other, and the whole from the other matter, consisting of tissue and blood, which held them together, as taken from the body of the fish. They were rubbed through a sieve, and as they passed through dropped into a solution of brine 10 or 12 per cent strong. The testimony discloses, without controversy, that the brine, as there used, is for the purpose of hardening the eggs, which otherwise, by reason of their soft and frangible condition, could not be successfully packed in either barrels or tins. After the application of the brine for the hardening purpose stated the latter is drawn away, the eggs dried by heat, and then packed with only those remaining particles of brine about it which naturally adhere. In this condition they are ready for shipment. They are immediately put into refrigerators and shipped to this country in refrigerated transportation facilities. It appears

that in transit the merchandise in tins is repacked in London. It is undisputed from the evidence that transportation of the merchandise other than in a refrigerated condition could not be successfully accomplished. There is no agency of preservation accomplished by the use of the salt sufficient even for the purpose of transportation, which fact would seem to conclusively indicate that if the salt were intended as a preservative it signally fails in that office. However, while it would be insufficient for a preservative in transit without the application of the refrigerating processes, the application of the refrigerating processes alone without the salt would be a sufficient preservative, not alone for the purpose of transportation, but until the merchandise enters into consumption. The real and potent agency of preservation is refrigeration, and not the salt or brine.

Upon arrival in this country and being taken from the vessel, the so-called caviar or fish roe is immediately placed in cold storage, and without that it would in a very brief space of time decay. It appears from the record that at least 80 per cent of the merchandise is then taken out of the large casks and tins and subjected to a so-called pasteurizing process. To do so it is put into small glass jars, holding not more than one or two wineglasses of the material, hermetically sealed, and then subjected to a steam bath up to 150° F. for a period of approximately 10 minutes. In this condition it is guaranteed, under the language of the label of the containers, to keep in any climate, and the testimony amply supports the verity of that warranty. In this condition no refrigeration or other processing is necessary to maintain a sound condition. The remaining percentage finds its way into commerce and consumption in the tin containers. Usually the tins, or always, in order to keep the same from decay, are subjected to a refrigeration process close to freezing, to wit, 32° F., as is the degree of refrigeration required from the time it leaves the point of production.

The sole issue for determination by this court is one of law, upon a given state of facts, and that whether or not this merchandise as imported can be held to be "preserved" for food purposes within the proviso of paragraph 549.

Some light is thrown upon the import to be given the word "preserved" in paragraph 549 by reading it in connection with paragraph 261. It will be noted that paragraph 261 enumerates various methods of preparation for and preservation of fish, within which term roe is included for dutiable purposes by similitude (Menzel *v.* United States, 142 Fed. Rep., 1038), and then generalizes upon these methods in the following language, "packed in ice or otherwise prepared for preservation."

Manifestly, Congress used the words "or otherwise prepared for preservation" as coextensive with the words "packed in ice," and

we can not escape the conclusion forced upon us by this disconjunctive coalition by Congress that treatment by ice or the refrigeration process was deemed by Congress to be one of the methods of "*preparation* for preservation" and not the "preservation" of such merchandise.

Paragraph 549, on the other hand, in the language by which it is said to exclude this merchandise therefrom speaks of "fish roe *preserved* for food purposes." Reading the two paragraphs together, it would appear that Congress contemplated the two conditions of fish roe or fish, one prepared for preservation, for example, by being packed in ice or refrigerated, and the other actually preserved, which is the condition contemplated by paragraph 549 in order to be excluded therefrom, and that fish roe could be "prepared for preservation" and yet fall short of the status known as "preserved," as used in paragraph 549.

Undoubtedly the fish roe in this case was prepared for preservation within purview of paragraphs 258 and 261, by being cleansed and possibly hardened with the salt and refrigerated, but we can not hold that it was "preserved for food purposes" so as to exclude it from paragraph 549, when its agreed condition here is plainly assigned a different statutory status by Congress. The exact contrary is a logical result. In the presence of another statutory status in cognate provisions of the law, plainly applicable to merchandise, the intention of Congress seems clear not to have intended to include them in a different and associated description.

The word "preserved" as used by Congress in tariff laws has been frequently the subject of interpretation. The uniform trend of decisions has been such as to establish a well-settled principle in the tariff interpretation, that the use of any instrumentality such as salt or sulphur fumes or any other agency of preservation in a limited extent in order to conserve the same in transit does not bring the goods into that condition known as "preserved" as that term is used in the tariff laws. Thus in Causse Manufacturing Co. *v.* United States (151 Fed. Rep., 4) the Circuit Court of Appeals for the Second Circuit makes this statement of the case:

The importations in controversy are cherries from which the pits have been removed, the fruit then washed several times in water, as a result of which the dirt and free juices were removed, then exposed to sulphur fumes, and then packed in casks in a weak solution of salt water in order to preserve the fruit in transit, the salt ranging in percentage from 0.118 to 0.402. They were designed to be converted into candied cherries, which is done by washing out the salt and sulphur dust, then boiling them in fresh water, and then boiling them in sugar sirup.

It was held by the court upon that statement of facts that the fruits were not preserved within paragraph 252 of the tariff act of 1897.

So in the cauliflower case, decided by the same court—in that case the merchandise was cauliflower, which in the language of the court

was cauliflower trimmed, washed, and packed in brine for preservation during transportation; the court saying:

This is precisely what is done in this country when it is desired to prevent cauliflower from decaying. We can not believe that this effort to keep cauliflower in "the way the farmer brings them to you" can be regarded as having a directly opposite effect, changing them from their natural state to a prepared or preserved state.

In that case the brine was sufficiently strong to act as a medium to prevent decomposition during the transit. In that case the brine used was in the main solely as a preservative agency during transit of the raw material which subsequently was to be prepared or preserved for the market upon reaching this country. In this case the use of the salt did not go that far, and even so its quantity as found was almost exactly that in the Causse case, which while sufficient in that case was insufficient here, else why the very expensive and constant application of the refrigeration process?

We are, therefore, of the opinion that this merchandise was not preserved as imported within proviso to paragraph 549 of the free list of the tariff act of 1897. Inasmuch, then, as paragraph 549 is the only provision in the tariff law providing for "fish eggs" eo nomine, and these as imported were not within the excluding exception of that paragraph, this merchandise of necessity falls within that paragraph As the goods were assessed for duty by similitude under paragraph 258 and 261, this provision becomes applicable before the similitude clause can be invoked. Indeed, if the merchandise were directly within the terms of said paragraphs, this eo nomine term, being more specific than the others, is controlling.

The decision of the circuit court and the Board of General Appraisers is *reversed* and the case *remanded.*