(C. D. 125)

M. Grumbacher *v.* United States

United States Customs Court, First Division

(Decided March 13, 1939)

*James W. Bevans* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Daniel G. McGrath*, special attorneys), for the defendant.

*Benjamin A. Levett* filed a brief as *amicus curiae*.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; McCLELLAND, P. J., concurring in the result

SULLIVAN, Judge: The official samples of the merchandise covered by these protests (Collective Exhibit 1) consist of two small brushes of soft hair set in metal holders or ferrules.

The collector of customs at the port of New York assessed duty on this merchandise at 1 cent each and 50 per centum ad valorem under paragraph 1506 of the Tariff Act of 1930. The pertinent portion of this paragraph is as follows:

PAR. 1506. * * * toilet brushes, ornamented, mounted, or fitted with gold, silver, or platinum, or wholly or partly plated with gold, silver, or platinum, whether or not enameled, 60 per centum ad valorem; * * * *other toilet brushes, 1 cent each and 50 per centum ad valorem * * * . [Italics ours.]

The italicized portion of the above paragraph is that under which this merchandise was classified.

The plaintiff's claims, as set forth in his protests, are as follows:

Said merchandise is not dutiable as assessed, but * * * as follows: at 40% ad valorem as hair pencils in quills or otherwise, or 50% ad valorem as all other brushes not specially provided for, under Par. 1506.

These provisions are contained in the last two clauses of said paragraph 1506, and are as follows:

PAR. 1506. * * * all other brushes, not specially provided for, 50 per centum ad valorem; hair pencils in quills or otherwise, 40 per centum ad valorem.

The appraiser in his report as to protest 827732–G, which, having been filed within the legal time, is part of the record, describes the merchandise in question as follows:

The merchandise in question consists of aluminum stemmed brushes used for applying nail polish and color to the finger nails. It was returned for duty as toilet brushes * * * *.

At the trial plaintiff's witness, Walter Grumbacher, proved two samples of this merchandise (Exhibit 1), and testified that he personally made sales of such merchandise as follows:

I cover part of Illinois, part of Missouri, part of New York City, and everything west of Denver to the Pacific Coast.

He further testified that he had supervision of sales made in other parts of the country, and "direct the salesmen, assist them in teaching them the business and the general functions of selling."

Counsel for plaintiff then read to the witness the definitions of "hair pencil" in Webster's New International Dictionary, Century Dictionary and Encyclopaedia, and Adeline's Art Dictionary. The last definition, as read by counsel, was as follows:

Pencil. The term pencil is sometimes applied to small hair brushes set in metal ferrules, which are used by water colorists.

The testimony then continued as follows:

Q. Whether there is any different meaning in the trade than the meaning that I have read to you, as given in the dictionary?—A. No, there is no different meaning in the trade.

The witness testified that he imports and sells brushes within the common meaning read to him by counsel. The witness produced samples of such brushes, which he testified come within that common meaning, as do also the samples previously introduced (Collective Exhibit 1).

Such illustrative samples, on objection of the Government, were excluded. They were marked Illustrative Exhibit A for identification. The witness then testified as follows (Record p. 26):

Q. Now, Mr. Witness, based on your experience in this business, what, in your opinion, is a hair pencil?—A. A hair pencil is a soft hair brush, mounted in a quill or in a metal ferrule, or in a celluloid ferrule or any kind of material; it can be pointed, it can be square, it can be flat, or it can be round; it can be without a handle.

\* \* \* \* \* \* \*

By Judge BROWN:

Q. What makes it a hair pencil?—A. Well, it has got little hairs in the ferrule or in the quill that come to a point, like a pencil, or has a shape like a pencil.

In response to questions by Judge McClelland as to whether he had even seen these brushes (Exhibit 1) in use, he said he had, extensively, and "They are being used for oil colors, oil painting, water-color painting, for applying lacquer, for applying correction fluid in mimeograph work." Further testifying as to their use, he stated: "They are used in nail polish; they are used in correction fluid for mimeograph work \* \* \* Exhibit 1, just in that form, just like that." In response to a question as to whether there were any other uses for Exhibit 1 he testified:

Repairing films, for photographic films, when two pieces of film break. They take these little camel's hair pencils and they put cement on one side of the films, and then on the other side, and put it together while it is still a little damp.

He testified he had never seen them used as eyebrow pencils. He further testified:

Hair pencils are soft hair pencils, in quills or in ferrules other than quills, or in celluloid mounting. \* \* \* These small pencils come to a point, to either a square point or a fine point, and they are like a pencil; they have a shape, when they are soft, their hair, and they come to a point, different-shaped points. \* \* \* They (Exhibit 1) come to a square point.

The witness then demonstrated by moistening Exhibit 1 with his tongue how it acquired what he called "a square point."

On cross-examination he was asked the chief use of Collective Exhibit 1, and answered "I don't know"; that he sold them as "Camel's-hair pencils in metal or aluminum ferrules"; that he had

seen them used for nail polish in his home, and by girls and "different people" to some extent for nail polish; that he had seen them so used "by stenographers in our office, and various girls in offices throughout the United States"; that he did not think the predominant use of Exhibit 1 was for nail polish.

The witness produced a sample of a preparation for mimeograph work, which he stated contained a brush like Collective Exhibit 1. It was received in evidence as Illustrative Exhibit B. This is a cylindrical cardboard box containing a small bottle labeled "Mimeograph correction fluid," also a thin glass rod about 2½ inches long. The court does not find any brush like Exhibit 1 in this box, but the witness testified "This (apparently meaning the brush) is exactly like one of these pencils."

The witness produced a brush (Illustrative Exhibit C) which is very similar to Exhibit 1, and he testified he imported it from Germany. As to the uses of Illustrative Exhibit C, he testified:

They were used for painting, for nail polish, for enameling, for water-color painting, for applying mimeograph fluid, applying liquid cements, and in general where smooth application of soft hair was required.

On further cross-examination the witness testified he personally saw these uses of Illustrative Exhibit C "plenty of times"; that the brush on Exhibit C "is shaped to a point" while that of Exhibit 1 is cut square; that some of the German brushes like Exhibit C were square and exactly like Exhibit 1.

Plaintiff's witness Linzer testified his firm manufactures brushes of all types and jobs them, both domestic and foreign; that he is the president of his firm and has been connected with it thirty-five years actively; that he has bought and sold brushes similar to Exhibit 1, the only difference being in the length of the hair, "otherwise, they had a metal ferrule and hair"; that he has sold brushes personally to various parts of the United States for twenty years; that he knows what a hair pencil is "by being born and brought up in the business."

Counsel then asked the witness whether the definition of "hair pencil" in Adeline's Art Dictionary of 1891 heretofore quoted, was his "understanding of what a hair pencil is." He answered "It is," and he sells his brushes under that term "hair pencils." His testimony then continued as follows:

Q. And what, in the brush business, within your business, distinguishes a hair pencil from any other type of brush?—A. Any type of brush made from a soft hair, other than bristle.

Q. And is the hair set in any particular type of ferrule?—A. It may be set in quill, ferrule, or composition.

Q. Does the character of the ferrule, that is, quill or otherwise, does that in any way change the classification of the brush?—A. It does not.

Q. Are the hair pencils that you have knowledge of, pointed?—A. Pointed or square.

Q. Will you examine Collective Exhibit 1 (handing to witness). What is the trim on that hair pencil?—A. Square end.

Q. Can that be brought to a point?—A. When moistened.

In response to a question by Presiding Judge McClelland he testified that Collective Exhibit 1 is "definitely a hair pencil."

He testified he knows the uses of Collective Exhibit 1, and specified such uses as follows:

One use, for striping or lettering; another use, for applying iodine; another use, in a school box, for painting with water colors.

Referring to the use of these brushes "for applying liquid polishes to the finger nails" he testified "I have never sold any types of these brushes for that purpose," and he had not seen them so used.

Defendant's witness Nagl testified he is president and general manager of a concern manufacturing and selling brushes, including brushes "almost identical" with Collective Exhibit 1. He produced samples of such brushes (Illustrative Exhibit D). They are very similar to Exhibit 1. In some instances, he testified, he has seen the uses to which brushes like Exhibit D are put; that their predominant or chief use is for applying nail polish to the fingers; that he had never seen them used to repair a mimeograph or film; that he has sold them entirely for the purpose of applying nail polish to the fingers "to the nail polish industry"; that "I designed this particular brush for that specific purpose"; that he had never sold or held out to the wholesale trade—to which he had sold millions of brushes—brushes like Illustrative Exhibit D as hair pencils.

On cross-examination it was disclosed that the witness received orders for his brushes from one concern in New York as "hair pencils." He gave his definition of "hair pencil" as follows:

In my opinion, a hair pencil is a soft pencil, soft-haired brush, with which a fine line can be painted, similar to, more or less similar to a pencil.

Referring to Exhibit 1 he testified, "It is quite obvious a fine line can't be painted with a *pencil* of this type, a brush of this type." "For the reason that the shape of the brush is flat."

Referring to Exhibit 1 the witness was of opinion that—

This particular brush has not been trimmed as closely, as flatly, as the average run of brush used for nail polish purposes.

The witness testified that he could not by moistening the brush portions of Exhibit 1 bring them to a point; that in his opinion it is the shape of the tuft of hair that "designates what a hair pencil is," and he has "never offered any brushes to the trade as hair pencils."

Defendant's witness Dolliver testified she is a manicurist; that in her occupation she uses a brush similar to or like Collective Exhibit 1 and Illustrative Exhibit D "to apply a nail polish"; that it is solely used by her for the nails to apply polish and oil thereto in the preparation of the toilet.

Defendant's witness Bullock testified she is manager of a beauty salon; that she and other operators associated with her have used a brush of the type and character of Exhibit 1 or Illustrative Exhibit D "for applying nail polish" to the customer's nails "and that is the only purpose it has been used for."

Defendant's witness Simpson testified she is a salesgirl and demonstrator of "Cutex nail polish," and a brush of the type of Exhibit 1 or D "is the class, type, and character of brush" she used, in demonstrating the application of nail polish to the nails.

Defendant's witness Spoor is a manicurist instructor, and in the course of her duties uses nail polish on the fingernails, and instructs her students how to use it; that in so doing a brush similar to Exhibit 1 or Illustrative Exhibit D is used, and that the only use of such brushes as far as her experience is concerned has been for the application of nail polish in "the making up of the toilet."

Defendant's witness Garrison testified she is a manicurist and has been a teacher of manicuring; that, in the course of her duties and teaching, brushes of the character of Exhibits 1 and D were used for the application of polish to the nails, and for no other purpose.

Defendant's witness Spees testified she is "Floorlady of the M. C. C. Laboratory, Incorporated," and has charge of the production of the fingernail polish department, also the packing up or putting together in combination with nail polish the brushes that are used in connection therewith; that such brushes are "similar in all material respects" to Exhibits 1 and D. On cross-examination she testified she assembled such brushes by attaching them to the cap of the bottle containing such nail polish, so that when the cap is screwed into the bottle the brush is held suspended in the liquid, and acts as a handle for the brush.

Defendant's witness Bloch is vice president of a concern that manufactures nail polish. A package containing a small bottle of nail polish was received in evidence as Illustrative Exhibit M. He testified it was nail polish produced by his company, and that the brush attached to the underside of the stopper of the bottle "is the same type, class, and character of brush as Collective Exhibit 1 and Illustrative Exhibit D"; that the use of such brush is to apply nail polish to the nails.

Defendant's witness De Prima testified he is connected with a company that manufactures Cutex; that he buys "bottles, caps, brushes, and all machinery for the factory"; that he purchases such brushes "for the sole purpose of applying nail polish to the fingertips"; that Collective Exhibit 1 and Illustrative Exhibit D is the type or character of brush he buys to be used in connection with the application of nail polish; that he has seen it in actual use in his factory.

Plaintiff's witness Grumbacher was recalled in rebuttal. The witness was shown a paint box marked Illustrative Exhibit I for identification, and testified he purchased it in Washington, D. C. This exhibit was received in evidence as Illustrative Exhibit I. This is a small tin box containing water color paints and a brush similar to Exhibit 1 with the addition of a wooden handle.

"Toilet brushes" have been defined in *Sears, Roebuck & Co.* v. *United States*, 26 C. C. P. A. 161, C. A. D. 11, as brushes for toilet purposes, as hairbrushes, toothbrushes, bath brushes, and shaving brushes. It was held that this term did not include shoe brushes, and it was stated that—

According to uses, brushes may be classified into the following groups: (1) toothbrushes; (2) other toilet brushes, such as hair, *manicure*, bath, and shaving; (3) paint, varnish, and artists; (4) household and industrial for cleaning and other purposes. * * * [Italics ours.]

Now the testimony introduced by the plaintiff, the samples, and the dictionary definitions clearly demonstrate that the brushes at bar, represented by Collective Exhibit 1, are hair pencils. It is further demonstrated by the testimony introduced by the defendant that these brushes may be used in manicuring the nails by spreading polish thereon. It is an *eo nomine* designation against a designation by use, and a designation by use as toilet brushes, so far as these brushes are concerned, would be much more general and less specific than the *eo nomine* designation "hair pencils." There are many different kinds of toilet brushes, while the term "hair pencils" would seem to be restricted to such brushes as those at bar, and those of the same type specified in *Solo Horton Brush Co.* v. *United States*, 63 Treas. Dec. 143, T. D. 46123. If we hold these brushes dutiable as toilet brushes the provision for hair pencils would be rendered nugatory by reason of the fact that some toilet use therefor might be ascertained.

Council for plaintiff has directed our attention to the fact that in every tariff act from 1861 down to and including the present act there has been a provision for hair pencils, or for "hair pencils in quills," or for "hair pencils in quills or otherwise," and contends that by reason of these continuous *eo nomine* enactments "Congress has not considered hair pencils as within the term 'brushes' for tariff purposes."

Counsel further calls our attention to the following extract from T. D. 47351, 66 Treas. Dec. 548:

(9) *Brushes.*—Certain metal-stemmed camel's-hair brushes, chiefly used for applying nail polish, are dutiable at the rate of 1 cent each and 50 percent ad valorem under the provision for toilet brushes in paragraph 1506, Tariff Act of 1930, rather than under the provision for hair pencils in the same paragraph. * * *

Counsel then states in his brief:

It is obvious from a reading of these instructions that the decision of the Treasury Department as to classification was predicated not upon whether or not such brushes were hair pencils, but upon use. That is to say, it was apparently the theory of the Department that if a hair pencil was chiefly used in applying nail polish, it was thereby removed from the eo nomine provision for "Hair pencils in quills or otherwise" and placed within the catch-all provision for "toilet brushes."

Counsel then contends that inasmuch as the hair pencils at bar are .eo nomine provided for, they are not removed from such classification by the particular use to which they "may be chiefly devoted at a given time." [Italics ours.] Counsel further contends that these hair pencils are not ejusdem generis with such toilet brushes as are eo nomine provided for in paragraph 1506 "or definitely described therein." Further, that by reason of the fact that in all tariff acts since that of 1861, where provision for "brushes" has been made in the same paragraph, "hair pencils" have been separately enumerated, and that this fact evidences the intention of Congress not to place hair pencils in the same category as brushes "otherwise, why the necessity of separately enumerating 'brushes of all kinds' and 'hair pencils' where the same rate of duty was applied." This last quotation is not entirely applicable to the present tariff act where there is a separate provision for "hair pencils in quills or otherwise" and a separate duty apart from brushes.

We quote the following from the opinion of our appellate court in *United States* v. *General Hide & Skin Corporation*, 11 Ct. Cust. Appls. 78, T. D. 38731, at page 81:

It has been repeatedly held that where an article is designated without words of limitation, that designation will generally include the article in all its forms known to commerce. [Citing cases.]

In *Nootka Packing Co. et al* v. *United States*, 22 C. C. P. A. 464, T. D. 47464, page 470, we find the following:

The clear weight of the authorities on the subject is that an eo nomine statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

Applying the foregoing quotation to the case at bar: Here we have had an *eo nomine* statutory designation for more than seventy-five years for "hair pencils," or "hair pencils in quills," or "hair pencils in quills or otherwise," "without limitations or a shown contrary legislative intent" or "judicial decision" to the contrary, and without "administrative practice to the contrary" until the issuance of T. D. 47351, *supra*, on November 17, 1934, and "without proof of commercial designation" that these articles are not known commercially as hair pencils. We have some proof indicating that hair

pencils are used for manicuring or toilet purposes, and the contention by reason thereof is that they should be removed from the *eo nomine* designation "hair pencils," and placed under the general designation "toilet brushes." It would seem from the *Nootka Packing Co.* case, *supra*, that the *eo nomine* designation "hair pencils" would include all forms of hair pencils, whether some forms are used for toilet purposes or not, especially as the tariff provision reads "hair pencils in quills *or otherwise.*"

The issue in *Solo Horton Brush Co. v. United States, supra,* was whether certain articles were classifiable as brushes not specially provided for or as "hair pencils in quills or otherwise." In that case testimony was introduced at the trial as to the commercial signification of the term "hair pencil," and having been found by the court to be unreconcilable, the court resorted to the common meaning of the term, as given by lexicographers. One of these designations was that contained in "Adeline's Art Dictionary" heretofore quoted. A large number of exhibits of hair pencils, and the specific names therefor, such as "water-color brush, paint brush, artist's brush, easel brush, camel's-hair marking brush" were covered by that case, yet we held them all to be classifiable as "hair pencils in quills or otherwise" under paragraph 1506 of the present act. Our judgment was appealed to the Court of Customs and Patent Appeals (suit 3639), but upon stipulation of the parties the appeal was dismissed. Therefore, our decision and judgment stands as an authority on hair pencils.

While in the case at bar there is some testimony to the contrary, the weight of the testimony and the common meaning of the term "hair pencil" as set forth in the dictionary definitions quoted by counsel for plaintiff in the case at bar and by the court in the *Solo Horton* case, *supra*, demonstrate that these articles are a species of hair pencil, which, judging from the *Solo Horton* case, *supra*, and the testimony in this case, are used for many purposes, including oil and water-color painting, for applying lacquer, and for applying nail polish to the fingernails. If a brush is a hair pencil used for oil and water-color painting, etc., why should its classification be changed merely because the same hair pencil has a *present-day use* in applying nail polish to women's fingernails?

Plaintiff also contends that these hair pencils are not classifiable as toilet brushes because not *ejusdem generis* with the brushes *eo nomine* provided for as toilet brushes in paragraph 1506. Unfortunately, however, for this contention "tooth brushes" are the only toilet brushes *eo nomine* mentioned in the paragraph, the provision reading "tooth brushes and other toilet brushes." Of course, these hair pencils are not *ejusdem generis* with tooth brushes. However, toilet brushes are mentioned therein with handles and backs composed of celluloid, pyroxylin, etc., or ornamented with precious metals or

plated with precious metals; certainly these hair pencils would not be *ejusdem generis* therewith.

Counsel for plaintiff closes his brief by calling attention to the fact that T. D. 47351, *supra*, resulted "in an increase in duty ranging as high as 2100%," and adds:

We do not believe that Congress ever intended that a hair pencil of a particular size, which, by reason of such size, might lend itself to the application of varnish to the fingernails, rather than varnish for a picture, should be singled out and assessed with a duty running as high as 2100% over that assessed against the same hair pencil, perhaps of a larger size, that may be used in applying water colors or varnish to some surface other than the fingernails.

There is a great deal of strength to that contention of counsel.

On the other hand, the Government contends that these brushes are *chiefly* used as toilet brushes, and therefore are classifiable as. toilet brushes rather than as hair pencils. The court is not convinced, however, that the chief use of these brushes is for manicuring purposes. True, the witnesses for the Government were practically unanimous in their testimony that they had used them or seen them used for nail varnishing purposes. It will be observed, however, that these witnesses either dealt in or manufactured nail varnish, or brushes for applying it, or were in the manicure business. On the other hand, plaintiff's witnesses named many uses for them apart from their use for nail varnish. We are not convinced that spreading nail polish on the finger nails is the chief use for these brushes.

As the Government states in its brief, the classification by the collector in this case "*presupposes* that the collector found every fact that was necessary to sustain his classification." But plaintiff has introduced facts contra to his classification, and the presumption of correctness attaching thereto cannot be weighed as evidence against the evidence introduced by the plaintiff showing that, although these hair pencils have a use for applying varnish to the nails, among their many other uses, the fact remains that they are hair pencils, and *eo nomine* provided for as such in the tariff act.

Although one of the uses of these hair pencils is for the toilet we are satisfied they are not toilet brushes, nor *ejusdem generis* therewith.

The Government contends in its brief that "A classification by *chief* use prevails over an *eo nomine* designation." The court, however, is not satisfied that the *chief* use of these hair pencils is for toilet purposes. As we feel that this is not their chief use their classification as hair pencils should not be disturbed by reason of their use in manicuring. The authorities cited by the Government on *chief* use are therefore not applicable.

It has been universally held that an *eo nomine* designation takes precedence over a more general designation, unless contrary intent is shown. *Hansen* v. *United States*, 1 Ct. Cust. Appls. 1, T. D. 30796;

*United States* v. *Borgfeldt*, id. 370, T. D. 31455; *Knauth, Nachod & Kuhne* v. *United States*, 2 id. 479, T. D. 32229; and *Burr & Hardwick* v. *United States*, 9 id. 71, T. D. 37943.

It is true that a designation by use may destroy an *eo nomine* designation, but it seems clearly to have been the intent of Congress that where use is to be the controlling method of classification it must be established that such use is the chief use of the article *eo nomine* designated, and where an article is designated without words of limitation that the designation will generally include the article in all its forms known to commerce. *United States* v. *General Hide & Skin Corporation*, 11 id. 78, T. D. 38731; *Smillie & Co.* v. *United States*, id. 199, T. D. 38966.

In *Chicago Mica Co.* v. *United States*, 21 C. C. P. A. 401, T. D. 46927, the court clearly enunciated that tariff statutes are made for the future as well as for the present, and it would seem that where an article which actually existed, although but little availed of, becomes available by reason of processes developed for its utilization, it should be held to be embraced within the paragraph where *eo nomine* designated.

These authorities evidently require that there shall be very clear testimony of chief use in order that classification by use shall prevail over an *eo nomine* designation.

In *United States* v. *Ducommun Hardware Co.*, 7 Ct. Cust. Appls. 353, T. D. 36904, it was held that the determinative fact of use is chief use.

The court is of opinion that these articles are commonly known as "hair pencils", being within the definitions cited with approval by this court in the *Solo Horton* case, *supra*, and particularly the definition in Adeline's Art Dictionary, *supra*, that they have many uses, viz, for oil and water color painting, for applying lacquer, for applying correction fluid in mimeograph work, *for applying nail polish*, for repairing photographic films, for enameling "and in general where smooth application of soft hair was required." In addition, the court calls attention to the many uses for hair pencils set forth in the *Solo Horton* case, *supra*. Inasmuch as the court is convinced that the use of these hair pencils for manicure purposes is only one of their uses they cannot be classifiable as toilet brushes. They cannot be classifiable under the doctrine of chief use as toilet brushes, if they are not chiefly used as such.

There is abundant testimony to establish that these articles are hair pencils, and that they have many uses, one of them being for applying polish or varnish to the finger nails. It seems to us that such use, not being predominating, cannot under the authorities override the *eo nomine* provision. When Congress enacts an *eo nomine* provision as specific as that in question, it cannot be destroyed by a provision indicating use unless such use is predominantly the

chief use. If the contrary were true, the fact that one of the uses for these hair pencils is a toilet use, would destroy a specific enactment that was created by Congress for a specific purpose, viz, to render all classes of hair pencils dutiable at 40 per centum ad valorem. To classify these articles as toilet brushes there must be overwhelming proof that they are such, and that their chief use, if not only use, is for toilet purposes. We find the facts in the case at bar do not justify such a conclusion.

We therefore hold them dutiable as claimed as hair pencils at 40 per centum ad valorem under paragraph 1506.

The protests are sustained. Judgment for plaintiffs.

McClelland, Presiding Judge: I concur in the result.