(C. D. 646)

SARDIK, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 8, 1942)

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue* and *Alfred A. Taylor, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This case arising at New York involves the classification of certain banana flakes imported from Ecuador. Duty was assessed thereon at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930. The plaintiff claims that the merchandise is

free of duty under paragraph 1618, or, if dutiable, it is dutiable under the provisions of paragraph 752, as amended by the trade agreement with Ecuador, T. D. 49710.

The paragraphs in question provide as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 752. Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, * * * 35 per centum ad valorem; * * *

[Amended by the trade agreement with Ecuador, effective on or after October 23, 1938]

Par. 752. Bananas, dried, desiccated or evaporated, 17½ % ad valorem.

Par. 1618. [Free list] Bananas and plantains, green or ripe.

At the trial plaintiff's witness testified as follows: that he is in charge of the New York factory of the importer who is engaged in the business of dehydrating fruits and vegetables and that he is familiar with the production of all such material at that plant and also with imported material; that in the method of preparation of the imported material the fully ripe bananas are peeled, the pulp placed in a hopper, and the air removed to prevent oxidation; that the material is passed through a pulper changing the form to that of a puree or sauce and then the pulp is conveyed through pipe lines directly to a drier, consisting of a cylinder of stainless steel where in twenty seconds all moisture is expelled and the product then removed in the form of small flakes such as imported herein. The witness further testified that in the process nothing is removed from the bananas except water and nothing has been added to the natural bananas either for coloring or preserving the same; and that the imported product has the odor, taste, and color of bananas.

The plaintiff contends that the *eo nomine* provision for "bananas * * * ripe" is unlimited in scope and includes all ripe bananas whatever their condition or form; that a ripe banana subjected to a drying process differs from a natural banana only because of its form and should be classified under the provision enumerated for ripe bananas. Plaintiff, in support of his contention, cites many decisions holding that processes of drying are not necessarily manufacturing processes and that a change in form of an article does not always imply a manufacturing operation. Plaintiff relies upon the principle announced in the case of *Nootka Packing Co.* v. *United States*, 22 C. C. P. A. 464, T. D. 47464, and also cites this court's ruling in the case of *Vanillaproco* v. *United States*, 6 Cust. Ct. 441, C. D. 510.

The Government contends that the provision for bananas is not extended by words of qualification but is limited to bananas which are either "green" or "ripe," and as it is a matter of common knowl-

edge that a banana in its natural state is either green or ripe, the paragraph is limited to bananas in their natural condition; and that inasmuch as an *eo nomine* provision names an article in some form it would not include therein such article so processed as to have a new name, a new use, and new characteristics.

The Government further argues that as the only claim urged in plaintiff's brief is that under paragraph 1618, the controversy herein is limited to the construction of that paragraph only and if plaintiff fails to affirmatively prove such claim the protest should be overruled without consideration of the alternative claim. No cases are cited in support of such contention and we will dispose of the same upon the authorities hereinafter cited. The alternative claim referred to is paragraph 752, as amended, *supra*. The plaintiff has established by the evidence including the sample of the imported merchandise that the article is in fact dried. In *United States* v. *Faber*, 16 Ct. Cust. Appls. 467, T. D. 43211, certain pencils were claimed dutiable under paragraph 1452, act of 1922, rather than under paragraph 216 of such act. This court sustained the protest under the first provision in paragraph 1452 as urged by the plaintiff. Upon appeal our appellate court held that the pencils were not so dutiable but found the same to be properly classificable under the last portion of that paragraph upon a finding that the protest was broad enough to cover all of the provisions in said paragraph 1452.

In *Bates* v. *United States*, T. D. 47189, certain articles manufactured of synthetic resin were classified by the collector under paragraph 1539 (b). The plaintiffs relied upon the claims that the merchandise was dutiable under paragraph 1537 by virtue of paragraph 1559, or under paragraph 28. The protest contained an alternative claim that the merchandise was dutiable at 20 per centum ad valorem under paragraph 1558, as a nonenumerated manufactured article. The court found that the merchandise was not dutiable as assessed and also that it was excluded from the provisions of paragraphs 1537 and 28, and then stated that inasmuch as the Government had failed to point out a more appropriate paragraph under which classification might be made, the merchandise was dutiable as a nonenumerated manufactured article under paragraph 1558, the alternative claim in the protest. Upon authority of the foregoing decisions, we find Government contention upon the alternative claim without merit.

The remaining question before us for consideration is the interpretation of the *eo 'nomine* tariff provision for "Bananas * * * green or ripe," as distinguished from "Bananas, dried, desiccated or evaporated."

The existence of the *eo nomine* rule implies that there is sometimes reasonable ground to claim that merchandise is embraced in the language of more than one paragraph and its effect is to classify

such merchandise under the one which more precisely describes it. The controlling factor is always whether the language of the one more accurately describes the merchandise than that of the other, and when so found, it is applied unless something appears which indicates that it was the intention of Congress that the merchandise should be classified without regard to the *eo nomine* rule. See *Carter & Son* v. *United States*, 6 Ct. Cust. Appls. 253, T. D. 35475; *Wilson & Son* v. *United States*, 6 Ct. Cust. Appls. 255, T. D. 35476; and *Levi, Sondheimer & Co.* v. *United States*, 7 Ct. Cust. Appls. 447, T. D. 37012. Tariff statutes are drafted by Congress in the language of commerce, presumptively that in common use (*Bakelite Corporation* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117), and when the common meaning of a statutory term is once determined by the courts it will be adhered to until a legislative change in the statutory enactment in question necessitates a changed determination of such meaning. *United States* v. *North American Mercantile Co.*, 17 C. C. P. A. 378, T. D. 43820.

The evidence before us establishes that the merchandise is nothing but ripe bananas which have been artificially dried, and the sample in evidence corroborates the testimony that the product is dried and has the color, taste, and odor of bananas.

Reviewing the tariff history of the *eo nomine* provision for bananas we find that it appeared first in the free list of the Tariff Act of 1922. Prior to that time such products were generally provided for either as "Fruits * * * green, ripe or dried," or under the more restricted provision for "Edible fruits, * * * when dried, desiccated, evaporated, or prepared in any manner."

At the time the Tariff Act of 1922 was being considered Congress had before it a publication of the Tariff Commission entitled "The Summary of Tariff Information, 1921," page 713, wherein appeared the following:

*Description and uses.*—The banana is imported almost entirely in its natural state and may be eaten raw or cooked. Usually it is the underripe fruit which is cooked before the starch has been converted wholly into sugar. * * * Banana flour, meal, and dried banana are used to a limited extent.

It will be noted that Congress, when providing for bananas, specifically specified free entry for bananas in two forms, to wit, green or ripe, although being fully aware that such fruit was imported in other forms, and having presumptive knowledge of the fact that the courts have construed the terms "green and ripe" as applying to fruits or vegetables in particular forms only, and also that in other sections of the act there were provisions generally for fruits.

In the case of *Thornley* v. *United States*, T. D. 24493, G. A. 5351, dried bananas were assessed at 2 cents per pound under paragraph 262, act of 1897, as "edible fruits * * * when dried, desiccated,

evaporated, or prepared in any manner," and were claimed free of duty under paragraph 559, as "fruits * * * green, ripe, or dried." The court there held that dried bananas were more specifically provided for as edible fruits. Also in *Causse Manufacturing Co.* v. *United States*, 143 Fed., 690, T. D. 26971, it was held that the words "green or ripe" are words of limitation and include only the fruit as taken from the tree. (See affirmance on this point by Circuit Court of Appeals, 151 Fed. 4, T. D. 27751.) The circuit court there stated:

* * * the words of limitation, "green or ripe," * * * indicate an intention on the part of Congress to include the fruit specified in the act as *plucked or taken from the tree.* [Italics not quoted.]

When the foregoing case was before this court, the classification of certain pears was also involved, but the decision thereon was not appealed. See G. A. 5917, T. D. 26029. The pears there in question were whole fruits which had undergone no further treatment than immersing in water. The court found that the pears were to all intents and purposes in their natural state and held them dutiable under the *eo nomine* provision for pears "green or ripe."

In *Levy & Levis Co.* v. *United States*, 5 Ct. Cust. Appls. 89, T. D. 34130, certain Dalmatian cherries were classified under the Tariff Act of 1909 as edible dried fruits. The importer claimed the cherries dutiable under the *eo nomine* provision in paragraph 274, as "cherries * * * green or ripe," or entitled to free entry under duty-free paragraph 571, as "fruits * * * green, ripe, or dried." The evidence there established that Dalmatian cherries are not picked when ripe but are allowed to remain on the tree until they become overripe and shrivel or shrink. Then the cherries are gathered. At the time of gathering they were wet and contained so much of the natural juices that moisture exudes from them in such quantities as to discolor the barrels in which they were packed; that such cherries were not bought and sold as dried cherries; and that according to the uncontradicted testimony they were simply overripe fruit. In considering the classification of such cherries, our appellate court stated:

Cherries are fruits and are therefore within the language of paragraph 571. Nevertheless, they cannot be admitted to free entry * * * if they have been subjected to duty by some more specific provision of the tariff act. Cherries, green or ripe, are provided for by the first clause of paragraph 274 and made dutiable at the rate of 25 cents per bushel. If the cherries be dried, they fall within the designation of edible fruits, dried, and are subjected by the same paragraph to a duty of 2 cents per pound. Cherries and edible fruits are kinds or classes of fruits and consequently the provisions imposing a duty on cherries, green or ripe, and on edible fruits, dried, are clearly much narrower in scope than the free-entry provision, which is broad enough to embrace all fruits, green, ripe, or dried, and whether edible or not. * * * From this it follows that the merchandise is more specifically provided for under paragraph 274 than under paragraph 571 of the free list and that the cherries are not entitled to admission free of duty.

But one question remains to be determined, and that is, Do the cherries fall within the designation of edible fruits, dried, or may they be better classified as "cherries, * * * green or ripe?" From the evidence adduced at the hearing we are satisfied that *these cherries are not edible fruits, dried, within the common ordinary meaning of that designation. Fruits, in order that they may be considered as dried, must be brought to such a condition that they may be properly described as no longer in the juice. Fruits which still retain an appreciable quantity of the watery component natural to them are commonly recognized as fresh fruits, and until their liquid constituent has been evaporated and the fluidity characteristic of their fruit juices has been removed, such fruits can not properly be regarded as dried fruits. * * * Certainly a fruit as juicy as that is not of the class of dried fruits typified by prunes, raisins, dried apples, dried peaches, dried currants, and the like.*

The goods are, in our opinion, ripe cherries and are therefore dutiable at 25 cents per bushel under the first clause of paragraph 274. [Italics not quoted.]

In *United States* v. *Meyer Co.*, 12 Ct. Cust. Appls. 124, T. D. 40049, certain sour dried Dalmatian cherries were classified as cherries in a raw state, preserved in brine or otherwise. The importer claimed the cherries classifiable as edible fruits, when dried, desiccated, evaporated, or prepared in any manner. When the case was before the trial court, the evidence failed to establish the condition of the cherries at the time of importation, it being agreed that a sample of the merchandise be admitted in evidence and that this sample was not further processed than sun dried. The court determined from the sample that the cherries were "dried cherries," and assessable as claimed, as "fruits * * * green, ripe, or dried. "Upon appeal the court in affirming this court stated:

* * * Only those fruits can properly be regarded as raw which are in their natural state or so nearly in that condition that they retain substantially unimpaired the qualities and characteristics of the fruit as it came from the tree. Raw fruits are converted by cooking into a different commercial commodity and the heat which accomplishes that change is equally effective when employed to dry fruit. By *drying*, the watery content and the juice of the raw fruits is in large measure eliminated and *a new product results which would not be regarded by people in general as raw fruit.*

Raw fruit, dried fruit, and cooked fruits are commonly regarded as radically different articles and Congress itself has long recognized the difference between them by providing for them as separate distinct tariff entities. [Italics not quoted.]

In the case of *United States* v. *Goldmark*, 16 Ct. Cust. Appls. 562, T. D. 43295, certain lima beans were assessed for duty under paragraph 763, act of 1922, as dried beans at 1¾ cents per pound. The importer claimed the beans to be properly dutiable as "green or unripe" at one-half of 1 cent per pound. It appears that the bean plants were ripped from the ground while the beans were still green or unripe and allowed to dry in the sun. After threshing they were placed in bags and shipped. In this country they were sold as dried beans but were used as a side dish the same as green lima beans. The plaintiff contended that the drying was merely for transportation purposes and

that such drying did not alter their condition as green or unripe beans for tariff purposes. The court referred to the Summary of Tariff Information for 1921 and noted that green or unripe beans were defined therein as follows:

"Green or unripe beans (including string beans) enter only into a rather local or seasonal trade when not canned or preserved in brine"

and particularly emphasized in its opinion that paragraph 763, with the exception of the "not specially provided for" clause was presented to Congress by the Tariff Commission in the form in which it is found in the act. In holding that the beans were classifiable as dried beans, the court stated:

There is no showing in this record that the term "beans, * * *; dried," either commonly or commercially, is confined to the mature bean. As we view the question, if it were conceded that these were green beans, they would be, also, green beans, dried. * * * merchandise must be classified and assessed for duty in the condition imported and the condition in which the merchandise at bar is imported is in its dried condition. Under the admitted facts in this case, the merchandise is green or unripe beans which have been dried.

The court recognized that the beans there in question were more than "green or unripe beans" and were in fact "beans * * * dried," and so properly classified by the collector.

In view of the foregoing decisions as to the tariff construction of the descriptive words "green," "ripe," or "dried" when applied to fruits or vegetables, it is our opinion that had Congress intended the provision for "bananas * * * green or ripe" to include ripe bananas in a dried condition, it would have so indicated in the paragraph. We therefore are of the opinion that the green or ripe bananas provided for in the duty-free paragraph 1618 has reference to bananas in their natural condition as taken from the tree whether in the state of being ripe or unripe and excludes therefrom ripe or unripe bananas in other than their natural condition. The cases relied upon by the plaintiff are not in point because in the *Nootka* case, *supra*, the provision for clams is not limited as to their condition, only providing that they shall be packed in a certain manner, and in the *Vanillaproco* case, *supra*, the vanilla beans were without any qualification or limitation whatever in the duty-free paragraph.

Being therefore of the opinion that the merchandise herein, established by the evidence to be composed solely of ripe bananas which are dried, is not classifiable under duty-free paragraph 1618 as "bananas * * * green or ripe," it must be relegated to the non-enumerated provision for manufactured articles in paragraph 1558 unless more specifically provided for elsewhere in the tariff act. We find, however, that paragraph 752 provides generally for "fruits

\* \* \* dried, \* \* \* not specially provided for," at the rate of 35 per centum ad valorem. The merchandise herein would seem to come directly within that classification. However, that paragraph was amended by the trade agreement with Ecuador before the importation of the merchandise in question by including therein a specific *eo nomine* provision for "Bananas, dried, desiccated or evaporated" and reducing the duty upon such dried fruits from 35 per centum to 17½ per centum ad valorem. Inasmuch as paragraph 752, as amended, specifically provides for bananas in the condition of the imported product, we hold it dutiable thereunder at the rate of 17½ per centum ad valorem as claimed.

For the reasons stated, judgment will be entered in favor of the plaintiff, directing the collector to reliquidate the entry and make refund accordingly.