(C. D. 1536)

Christo Poulos & Co., Inc. } *v.* United States
Lunham & Reeve, Inc.

United States Customs Court, Third Division

(Decided June 24, 1953)

*Barnes, Richardson & Colburn* (*James F. Donnelly, Harry LeBien,* and *Frank L. Lawrence* of counsel) for the plaintiffs.

*Warren E. Burger,* Assistant Attorney General (*Harold L. Grossman* and *Chauncey E. Wilowski,* special attorneys), for the defendant.

(1)

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This protest involves peeled pears, packed in a solution of sulphur dioxide, imported from Italy in barrels. They are used in the manufacture of glacé fruit. The merchandise was assessed by the collector at 20 per centum ad valorem under paragraph 749 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as pears, prepared or preserved, not specially provided for. It is claimed to be properly dutiable at one-half of 1 cent per pound under paragraph 749, as originally enacted, as pears, green.

The pertinent provisions of the tariff act are as follows:

PAR. 749. Pears: Green, ripe, or in brine, one-half of 1 cent per pound; * * *.

PAR. 749 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. Pears, prepared or preserved, and not specially provided for, 20% ad val.

A sample of the merchandise from the entry at bar, imported on or about September 27, 1949 (plaintiffs' exhibit 1–A), and a jar containing similar merchandise imported in August 1950 (plaintiffs' exhibit 1–B) were introduced into evidence. It was stated that plaintiffs' exhibit 1–A had been opened to enable Government chemists to analyze it and that it had previously been identical in appearance as respects color, composition, and texture to plaintiffs' exhibit 1–B. Plaintiffs' exhibit 1–B consists of whole peeled pears with the stems on in a liquid. The pears are almost white in color. Exhibit 2, the report of the analysis of plaintiffs' exhibit 1–A made by the United States Customs Laboratory, states:

The contents of the jar is composed of whole peeled pears immersed in a liquid. The pears and the liquid have the following:

|  | Sulphur Dioxide p. p. m. | Salt (Sodium Chloride) % |
|---|---|---|
| Liquid | 1900 | 1. 9 |
| Solid (Pear) | 2000 | 1. 7 |

At the trial, plaintiffs called three witnesses: Christo Poulos, an officer of Christo Poulos & Co., Inc., and a manufacturer of glacé fruits since 1934; Sol M. Wolff, food broker specializing in fruits and peels in brine; and Frank Saltarelli, food chemist employed by Christo Poulos & Co., Inc. Defendant called Ernest H. Wiegand, professor at Oregon State College and head of the food technology department.

Mr. Poulos testified that the imported merchandise is prepared for shipment in Italy in the following manner: The pears are picked green, that is, unripe, are peeled, and placed in casks filled with enough water to cover the fruit thoroughly. Then, sulphur dioxide of a concentration of 3,000 to 3,500 parts per million is injected. Mr. Poulos stated that immature **or** green pears are used since pears which were too ripe would deteriorate in the solution. The pears are peeled

before immersion because unpeeled pears shrivel or shrink as the solution does not penetrate the body of the fruit. There was introduced into evidence a sample of domestic pears which Mr. Poulos had had placed in an unpeeled condition in a solution of sulphur dioxide and water about 3 months before the trial date (plaintiffs' illustrative exhibit 4). Mr. Poulos testified that those pears had shriveled and were not suitable for use in glacéing fruit. Mr. Poulos also stated that pears are peeled before shipment in order to save on the freight charges because the peel constitutes 25 per centum of the weight of the pear.

Mr. Poulos testified that first every possible trace of sulphur dioxide is removed by an intensive washing process. The pears are then treated with sugar and corn sirup for 15 to 18 days. After the first 7 or 8 days of this period, the sirup is changed and more sugar is added. The purpose is to extract water gradually from the fruit and permit slow penetration of the sugar solution so that the fruit does not collapse but looks whole when it is glacéed. Illustrative exhibits of glacé pears and other fruits were introduced into evidence (plaintiffs' illustrative exhibits 3, 5, and 6).

Mr. Poulos testified that the purpose of placing the pears in the sulphur dioxide solution before shipment is to preserve the fruit and keep it firm until processed. He has kept pears, such as plaintiffs' exhibit 1–B, in the barrels in which they were imported for 3 to 4 months. During such period, the merchandise is examined by the chemist every 30 days to test the solution, since the barrels are not airtight and the sulphur dioxide escapes easily. Mr. Saltarelli stated that if the fruit appears soft or if there is no odor coming from the barrel, it is assumed that the sulphur dioxide is low, and the fruit is processed immediately, or the solution is reinforced by the addition of potassium metabisulphite solution. In that way, the period of preservation is extended. Mr. Saltarelli and also Mr. Wiegand stated that if the containers were hermetically sealed, the preservation would last indefinitely.

The witnesses agreed that the pears were not edible in their imported condition, because the solution imparts a disagreeable taste and a very heavy odor to the fruit. They considered sulphur dioxide to be a deleterious substance which would sicken people. Mr. Wiegand stated that the Federal Food and Drug Administration permits it to be used only to the extent of 350 parts per million. Beyond that point, the product is not permitted in interstate commerce if it is preserved as a food material. Mr. Poulos stated that in processing pears, such as those here involved, as much sulphur dioxide as possible is removed.

It appears from the evidence that immersion in sulphur dioxide solution bleaches the fruit and takes most of the flavor out. It is then not such as would be bought and sold in wholesale fruit markets

as fresh or ripe fruits. Its only practical use is in the making of glacé fruits. Mr. Poulos stated that the pears in plaintiffs' exhibit 1–B were fresh before being put into the solution but were not fresh pears thereafter. He said they are not in their natural state because something has been added and something has been taken away. Mr. Saltarelli testified that, assuming that the pears were green when they were placed in the barrels for shipment, they have become green pears preserved in sulphur dioxide. Mr. Poulos stated that the immersion of such pears in sulphur dioxide solution does not make them more amenable to processing into glacé fruits. In Mr. Wiegand's opinion, however, the immersion does make them more amenable for such processing because the sulphuring permits a more rapid diffusion of the sugars into the fruit. He stated that fresh fruits picked from the tree would have to be treated before glacéing, but he did not say in what manner.

In short, it appears that the sulphur dioxide solution acts at least as a temporary preservative of the fruit. It keeps the fruit firm but bleaches it and takes out the flavor. The fruit is not edible in its imported condition and the sulphur dioxide must be thoroughly washed out before it can be further processed. It can be used only in making glacé fruit and for no other purpose. According to one witness, the immersion in sulphur dioxide makes it more amenable for that use.

Plaintiffs claim that the merchandise falls within the provision for pears, green, in paragraph 749 of the Tariff Act of 1930 on the ground that the processes and materials applied to the pears prior to importation were solely for the purpose of preserving them while in transit. ·

It has been held that the words "green or ripe" when used in tariff acts are words of limitation and refer to fruits or vegetables in their natural state. *Causse Mfg. Co.* v. *United States*, 151 Fed. 4, T. D. 27751; *Amerman & Patterson* v. *United States*, 34 Treas. Dec. 384, T. D. 37617; *United States* v. *A. Goldmark & Sons Corporation*, 16 Ct. Cust. Appls. 562, T. D. 43295; *Lekas & Drivas* v. *United States*, 19 C. C. P. A. (Customs) 389, T. D. 45523; *Sardik, Inc.* v. *United States*, 8 Cust. Ct. 400, C. D. 646.

It is clear that the merchandise herein is not in its natural state. It has been peeled, bleached, and the flavor removed. It is inedible until the sulphur dioxide has been washed out and then is suitable only for the manufacture of glacé fruits. It does not have the appearance, or all the characteristics or uses, of pears in their natural state. As Mr. Saltarelli stated, it is more than green pears, it is pears preserved in sulphur dioxide.

In *United States* v. *A. Goldmark & Sons Corporation, supra,* lima bean plants were torn out of the ground while the beans were still green or unripe and allowed to dry in the sun. After threshing, they

were placed in bags and shipped to this country where they were sold as green lima beans. It was claimed that the drying was merely for transportation and that it did not alter the condition of the beans for tariff purposes. It was held, however, that they were properly dutiable as beans, dried, rather than as beans, green or unripe, under paragraph 763 of the Tariff Act of 1922. The court said that they were more than green or unripe beans but were green beans which had been dried. See also *Fruit Products Corporation* v. *United States,* 45 Treas. Dec. 517, T. D. 40160 (affirmed *sub nom United States* v. *Fruit Products Corporation,* 12 Ct. Cust. Appls. 337, T. D. 40486), where the court said that cherries, sulphured or brined, preparatory to exportation, were not in their natural state.

Plaintiffs base their claim, however, on the principle that the use of any agency of preservation to a limited extent in order to conserve the goods in transit does not bring them into the condition known as "preserved," citing *Frosted Fruit Products Co.* v. *United States,* 18 Cust. Ct. 119, C. D. 1054; *Hansen* v. *United States,* 1 Ct. Cust. Appls. 1, T. D. 30769; *United States* v. *Kung Chen Fur Corporation,* 38 C. C. P. A. (Customs) 107, C. A. D. 447; *Causse Mfg. Co.* v. *United States,* 150 Fed. 419, T. D. 27513.

In *Frosted Fruit Products Co.* v. *United States, supra,* it was held that frozen guavas were dutiable as fruits in their natural state rather than as guavas, prepared or preserved. The court said that while frozen guavas differed from fresh guavas in that the calyx had been removed and the tissues broken down, the record did not show that they more closely resembled preserved guavas.

*Hansen* v. *United States, supra,* involved fish roe which had been dropped in brine for the purpose of hardening, removed therefrom, packed, and shipped in refrigerated transportation facilities. Under the applicable statute, the Tariff Act of 1897, it was held that Congress contemplated two conditions of fish roe, one prepared for preservation, as by being packed in ice or refrigerated, and the other actually preserved. It was held that the imported merchandise had been prepared for preservation but had not been preserved for food purposes.

In *United States* v. *Kung Chen Fur Corporation, supra,* it was held that whatever processing of certain kidskins was done in China did not constitute "dressing" under American trade standards since it did not advance them toward their use in the United States.

In *Causse Mfg. Co.* v. *United States, supra* (T. D. 27513), orange peel was transported in brine, and the court found that when taken out of the brine, it was in its natural state.

None of these cases is authority for the proposition that merchandise which cannot be restored to its previous condition has merely been preserved for transportation and is dutiable as the product in

its natural state. In the instant case, removal of the sulphur dioxide does not restore the color nor the flavor to the pears. Something more has been done to them than to conserve them, more or less unchanged, in transit. They are no longer in their natural state and cannot be returned to that condition. They are not classifiable as pears, green.

The record shows that the merchandise herein was packed in barrels which were not airtight and could not be kept indefinitely in its imported condition, whatever might have been possible had it been packed in some other way. Since the term "preserved" as used in tariff acts refers to a permanent preservation, the merchandise herein cannot be held to be "preserved." *Habicht v. United States*, 1 Ct. Cust. Appls. 10, T. D. 30772; *United States v. Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783; *Frosted Fruit Products Co. v. United States, supra.*

Although the merchandise herein is neither in its natural state nor "preserved," it has been changed in condition and the question remains as to whether the change is such as to render the article "prepared" within the meaning of the tariff act. Fruits which appear to have been similarly treated have been so held. *Causse Mfg. Co. v. United States*, 151 Fed. 4, T. D. 27751; *Delapenha & Co. v. United States*, 6 Ct. Cust. Appls. 18, T. D. 35252; *Amerman & Patterson (Inc.) v. United States*, 12 Ct. Cust. Appls. 117, T. D. 40047; *Edenfruit Products Co. v. United States*, 10 Cust. Ct. 134, C. D. 737.

In the *Causse Mfg. Co.* case (T. D. 27751), it was held that cherries which had been washed, the stems and pits removed, subjected to fumigation by sulphur for the purpose of bleaching and preserving them, and placed in a weak solution of salt and water, were not cherries, green or ripe, nor preserved in their own juices, but were dutiable as fruits, prepared.

*Delapenha & Co. v. United States, supra*, involved cherries which had been picked when barely ripe, treated with sulphur fumes or sulphurous acid, and packed in containers in a weak salt solution. Upon arrival here, they were cleansed of the sulphur and salt, pitted, boiled, and manufactured into maraschino or glacé cherries. They were held dutiable as edible fruit, prepared in any manner.

In *Amerman & Patterson (Inc.) v. United States, supra*, pineapples while yet green were peeled, cut into rectangular pieces, subjected to the fumes of sulphur dioxide, and immersed in brine. There was evidence that the process tended to bleach the fruit, make it harder and firmer in texture, and aided in permitting the sugar to penetrate into it. It also appeared that if sliced pineapples were imported without being processed, they would become soft and dark, and that if fresh pineapples were imported for the purpose of making glacé fruit, they

would have to be treated with sulphur fumes. The court held the merchandise dutiable as fruit, prepared, stating (p. 119):

* * * At the time of importation the present article was advanced in condition from the tariff status of mere green or ripe fruit to that of prepared fruit, for the treatment above described was virtually the first step in the manufacture of another commodity, namely, glacé pineapple, and the original pineapple was thereby prepared as material for that manufacture. * * *

The *Edenfruit Products Co.* case, *supra*, involved pineapple cores which were imported in a solution of water and sulphur dioxide. There was evidence that the raw pineapple cores would have spoiled if they had not been contained in the solution; that they were inedible as imported, due to an unpleasant taste; and that after the sulphur dioxide was removed, there was no natural flavor left in the fruit. It was claimed, as here, that the articles were imported in a solution of sulphur dioxide merely to keep them from spoiling while in transit and that they were, therefore, not prepared or preserved within the meaning of the tariff act. The court noted that although the goods would keep indefinitely in the solution in which they were imported, they could not be used for any purpose until the sulphur dioxide was removed; that cutting the core out of the pineapple was a preparation for the purpose of making confectionery, for which the merchandise was imported; and that the commodity had been bleached. It was, therefore, held dutiable as prepared pineapple.

The same situation exists in the instant case except that the pears have merely been peeled and not cut. It is clear that the merchandise as imported has been dedicated to a single use, the making of glacé fruit. Peeling the fruit advanced it toward this use. Mr. Poulos testified that in making glacé pears from fresh pears, the first step is to peel the fruit. There is also some evidence that the immersion in sulphur dioxide advanced it for its use in that it permitted a more rapid diffusion of the sugars into the fruit.

Upon the record herein, we hold that this merchandise is properly dutiable at 20 per centum ad valorem under paragraph 749 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as pears, prepared.

The protest is overruled and judgment will be rendered accordingly.