(C. D. 1355)

INTER-AMERICAS SHIPPING CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 31, 1951)

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Harold L. Grossman* and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is a protest, arising at the port of New York, against the collector's assessment of duty on certain merchandise imported from Cuba at 14 per centum ad valorem under paragraph 752 of the Tariff Act of 1930, as modified by the exclusive trade agreement with Cuba, T. D. 51819, as fruit paste or pulp. It is claimed that the merchandise is properly dutiable under said paragraph, as modified, at 10 per centum ad valorem as bananas, prepared or preserved in any way other than by drying, desiccating, or evaporating.

The merchandise is described in the consular invoice as "banana pulp with 16% sugar added" and was entered as "banana preserves in tins." At the trial it was stipulated that the merchandise was the same in all respects as that involved in *The Standard Fruit Product Co.* v. *United*

*States*, 23 Cust. Ct. 28, C. D. 1184, and the record in that case was received in evidence. It was further stipulated that the merchandise was composed in chief value of bananas and was the product of the growth or manufacture of the Republic of Cuba.

The merchandise involved in *The Standard Fruit Product Co.* v. *United States, supra,* was described by the court as follows:

* * * it consisted of bananas, ripened naturally and artificially, sugar, and benzoate of soda (a preservative) ; that it is made in the following manner : That partially ripened and ripened bananas of a type known as "non-payable," because they cannot be exported profitably, are peeled, macerated through a "tomato pureer," and heated for about half an hour at 160 degrees; that while the bananas are cooking, 16½ per centum sugar is added together with about 5 per centum honey, some benzoate of soda, and a small amount of citric acid ; that the mixture is cooled to about 100 degrees and canned; that the product is used principally by bakers and ice-cream manufacturers as flavoring; that the can contains about 78 per centum banana and 22 per centum something else.

In that case it was held that the merchandise was dutiable at 14 per centum ad valorem under paragraph 752, as modified by the trade agreement with Cuba, T. D. 50541, as fruit paste, the product of Cuba, rather than free of duty under paragraph 1618 as bananas, green or ripe.

The issue in the instant case is whether the merchandise is properly classifiable as bananas, prepared or preserved (not including bananas in their natural state and except dried, desiccated, or evaporated bananas), or as fruit paste or fruit pulp.

The pertinent provisions of paragraph 752, as modified by T. D. 51819, are as follows:

Fruits in their natural state, or in brine,
    pickled, dried, desiccated, evaporated, or
    otherwise prepared or preserved, and not
    specially provided for :
        Bananas (not including bananas in their
           natural state and except dried, desic-
           cated, or evaporated bananas) ; plantains;
           guavas ; papayas (not including papayas
           in their natural state) ; mameyes colorados
           (*calocarpum mammosum*) ; sweetsops (*annona*
           *squamosa*) ; soursops (*annona muricata*) ;
           sapodillas (*sapota achras*) ; and cashew
           apples (*anacardium occidentale*) _____ 10% ad val.
    *       *       *       *       *       *       *
Fruit pastes and fruit pulps :
        Guava ; mango ; papaya ; mamey colorado
           (*calocarpum mammosum*) ; sweetsop (*annona*
           *squamosa*) ; soursop (*annona muricata*) ;
           sapodilla (*sapota achras*) ; and cashew
           apple (*anacardium occidentale*) _____ 10% ad val.
        Other (except apricot) _____ 14% ad val.

Plaintiff claims that the provision for bananas, prepared or preserved, is more specific and more limited in application than the provision for fruit pastes and fruit pulps, in that the former covers only bananas which have been prepared or preserved other than by drying, desiccating, or evaporating, while the latter covers a multitude of fruits, prepared by converting them into paste or pulp. The Government claims that the merchandise has been so processed that it has lost its identity as bananas and has become a new article, distinct in character and use from the article out of which it was made.

If the competing provisions were fruit, prepared or preserved, and fruit paste or pulp, it is clear that the instant merchandise would fall within the latter provision, or, if the provisions were bananas, prepared or preserved, and banana paste or pulp, the instant merchandise would fall within the latter provision. As between bananas, prepared or preserved, and fruit paste or pulp, it appears that the former embraces more varieties of bananas, prepared or preserved, than paste or pulp, and the latter embraces more varieties of fruit paste or pulp than banana paste or pulp.

In *K. Togasaki & Co.* v. *United States*, 23 C. C. P. A. 342, T. D. 48197, it was held that bean flour fell within the provision of paragraph 775 of the Tariff Act of 1930 for "Vegetables * * * if reduced to flour" rather than the provision in paragraph 765 for "Beans * * * prepared or preserved in any manner." The court resorted to the legislative history of the provisions in order to determine the intent of Congress and stated (p. 347) :

* * * If Congress contemplated that the phrase "beans * * * prepared" in paragraph 765 of the Tariff Act of 1930 included bean flour, it would likewise have contemplated that the term "vegetables * * * prepared" in paragraph 775 of said act would include and embrace within said paragraph the flour from all vegetables which, in a prepared state, were not elsewhere provided for, and therefore it would have been wholly unnecessary to insert in paragraph 775 the language "if reduced to flour." Congress having added this provision to paragraph 775, it must be held to have been the Congressional understanding that, without such addition, said paragraph 775 would not have included the flour of such vegetables. Similarly, it must be held to have been the Congressional understanding that paragraph 765, without a similar addition, did not include bean flour; and, no such addition having been enacted, we must conclude that it was the Congressional intent that said paragraph 765 does not include bean flour.

In examining the history of the tariff provisions for fruits, it appears that the language in earlier tariff acts was substantially different from that found in paragraph 752 of the Tariff Act of 1930. Paragraph 749 of the Tariff Act of 1922 is as follows:

Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, and mixtures of two or more fruits, prepared or preserved, 35 per centum ad valorem:

*Provided,* That all specific provisions of this title for fruits and berries prepared or preserved shall include fruits and berries preserved or packed in sugar, or having sugar added thereto, or preserved or packed in molasses, spirits, or their own juices.

Earlier tariff acts contain the following language:

* * * all edible fruits, including berries, when dried, desiccated, evaporated, or prepared in any manner, not specially provided for in this section, * * *; comfits, sweetmeats, and fruits of all kinds preserved or packed in sugar, or having sugar added thereto or preserved or packed in molasses, spirits, or their own juices, if containing no alcohol, or containing not over 10 per centum of alcohol. * * *. (Paragraph 217 of the Tariff Act of 1913 and paragraph 274 of the Tariff Act of 1909.)

See also paragraph 263 of the Tariff Act of 1897, paragraphs 218 and 219 of the Tariff Act of 1894, paragraphs 303 and 304 of the Tariff Act of 1890, schedule G of the Tariff Act of 1883, and section 11 of the Tariff Act of 1864.

Under these acts, fruit pulps and pastes were held dutiable under the provision for "fruits preserved in their own juices." *G. W. Sheldon & Co.* v. *United States*, 3 Treas. Dec. 703, T. D. 22436; *Curtice Bros. & Co.* v. *United States*, 5 Treas. Dec. 719, T. D. 23987; *Carl Grubnau* v. *United States*, 6 Treas. Dec. 972, T. D. 24806; *Meyer & Lange et al.* v. *United States*, 7 Treas. Dec. 553, T. D. 25174; *Habicht* v. *United States*, 1 Ct. Cust. Appls. 10, T. D. 30772; *Meyer & Lange et al.* v. *United States*, 3 Ct. Cust. Appls. 247, T. D. 32565.

However, in *Stone & Co.* v. *United States*, 7 Ct. Cust. Appls. 173, T. D. 36492, currants which had been ground to a pulp were held dutiable under paragraph 217 of the Tariff Act of 1913 as "fruits * * * prepared" rather than as currants under paragraph 218. No mention is made of the provisions of fruits preserved in their own juices.

It appears that fruit pastes and fruit pulps were generally held to fall within the provisions for fruits, preserved in their own juices, rather than those for fruits, prepared. Paragraph 752 of the Tariff Act of 1930, however, omitted the provision for fruits, preserved in their own juices, and added a provision for fruit pastes and fruit pulps. Following the reasoning in *K. Togasaki & Co.* v. *United States, supra,* we conclude that if Congress had contemplated that the phrase "fruits, prepared or preserved" included fruit pastes and fruit pulps, it would have been unnecessary to insert in paragraph 752 the words "fruit pastes and fruit pulps." Since Congress added this provision, it must be held to have been the congressional understanding that, without such addition, paragraph 752 would not have included fruit pastes and fruit pulps. Similarly, provisions for specified fruits, prepared or preserved, do not include paste or pulp made from such fruit.

Paragraph 740 of the Tariff Act of 1930 provides for fig paste *eo nomine*, and mango pastes and pulps and guava pastes and pulps have been provided for *eo nomine* in various trade agreements. Cuba, T. D. 47232; Haiti, T. D. 47667; Honduras, T. D. 48131; Guatemala, T. D. 48317; El Salvador, T. D. 48947; Costa Rica, T. D. 49072.

It is pointed out in defendant's brief that paragraph 752, as modified by the exclusive trade agreement with Cuba, T. D. 51819, reduces the rate of duty on guava, mango, papaya, mamey colorado, sweetsop, soursop, sapodilla, and cashew apple fruit pastes and fruit pulps and also reduces the rate of duty on "other" fruit pastes and fruit pulps except apricot. This indicates an intent on the part of the negotiators that the *eo nomine* pastes and pulps take one rate and that all other pastes and pulps produced from fruits other than apricots take another rate. No *eo nomine* provision was made for banana pastes and pulps. Moreover, the provision for fruits, prepared or preserved, in the said trade agreement includes such fruits as guavas, papayas, mameyes colorados, sweetsops, soursops, and cashew apples, all of which are separately provided for when in the form of paste or pulp. It appears, therefore, that all fruit pastes and pulps were eliminated from the provision for fruits, prepared or preserved, both by Congress in the enactment of paragraph 752 of the Tariff Act of 1930 and by the negotiators of the said trade agreement.

In *United States* v. *A. Sahadi & Co., Inc.*, 23 C. C. P. A. 293, T. D. 48165, it was held that merchandise, consisting of apricots which had been processed into a paste or pulp which was subsequently dried, was properly dutiable under paragraph 735 as apricots, prepared or preserved. In the course of the opinion, the court said (pp. 296–297):

The contention that the merchandise is not apricots, dried, in a tariff sense, is supported, we think, by a consideration of the fact that if the paste or pulp which was spread on the board had been shipped to this country in an undried condition, it is probable that it would not have been dutiable under paragraph 735, but would have found classification as a paste or a pulp under paragraph 752, although it, in fact, was apricots prepared or preserved. A subsequent drying would not make the product dried apricots, but dried paste or pulp. There is no *eo nomine* provision for dried pastes or pulps, but unquestionably the apricots from which the involved preparation was made had been prepared or preserved otherwise than by drying, desiccating or evaporating and, therefore, the involved merchandise aptly responds to the last provision of said paragraph 735. *The legislative history suggests that although Congress understood apricot paste or pulp to be prepared or preserved apricots, it intended that such pulp or paste should be dutiable under paragraph 752.* There is nothing therein, however, which indicates an intent to require that apricots which had been processed into a paste or a pulp, which was subsequently dried, should find dutiable classification elsewhere than in the last provision of paragraph 735. [Italics supplied.]

The product herein corresponds to the type of fruit paste or pulp which the court intimated would be classified under paragraph 752.

For the reasons above stated, we hold that the merchandise involved herein is properly dutiable at 14 per centum ad valorem under paragraph 752 of the Tariff Act of 1930, as modified by the exclusive trade agreement with Cuba, T. D. 51819, as fruit paste or fruit pulp. The protest is overruled and judgment will be rendered accordingly.