INTER-AMERICAS SHIPPING CO. *v.* UNITED STATES (No. 4704)[1]

United States Court of Customs and Patent Appeals, December 17, 1952

*Sharretts, Hillis & Paley* (*Howard C. Carter* and *Joseph F. Donohoe* of counsel) for appellant.

*Charles J. Wagner,* Acting Assistant Attorney General (*Harold L. Grossman* and *Richard E. FitzGibbon,* special attorneys, of counsel), for the United States.

[Oral argument October 10, 1952, by Mr. Donohoe and Mr. FitzGibbon]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, COLE, and JACKSON (retired), Associate Judges

COLE, Judge, delivered the opinion of the court:

In this protest proceeding, which is an appeal from the judgment of the United States Customs Court, Third Division, pursuant to the decision C. D. 1355, 27 Cust. Ct. 104, the merchandise was described in the consular invoice as "banana pulp with 16% sugar added" and was assessed with duty at 14 per centum ad valorem under paragraph 752 of the Tariff Act of 1930, (19 U. S. C. section 1001, paragraph 752) as amended by the trade agreement with Cuba, T. D. 51819, as fruit

---

[1] C. A. D. 504.

paste or fruit pulp. The assessment as stated was sustained. The appellant appeals therefrom claiming the merchandise should have been assessed at 10 per centum ad valorem under the same paragraph, as modified, as fruits (bananas), prepared or preserved and not specially provided for.

The respective and pertinent parts of the statute are as follows:

Paragraph 752, as modified by T. D. 51819

> Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for:
>
> > Bananas (not including bananas in their natural state and except dried, desiccated, or evaporated bananas); plantains; guavas; papayas (not including papayas in their natural state); mameyes colorados (*calocarpum mammosum*); sweetsops (*annona squamosa*); soursops (*annona muricata*); sapodillas (*sapota achras*); and cashew apples (*anacardium occidentale*)_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 10% ad val.
>
> Fruit pastes and fruit pulps:
>
> > Guava; mango; papaya; mamey colorado (*calocarpum mammosum*); sweetsop (*annona squamosa*); soursop (*annona muricata*); sapodilla (*sapota achras*); and cashew apple (*anacardium occidentale*)_ _ 10% ad val.
> >
> > Other (except apricot)_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 14% ad val.

The provision specifically relating to bananas (in brine, pickled, or otherwise prepared or preserved, and not specially provided for) became, through the amendment, effective January 1, 1948.

At the trial, counsel for both parties stipulated that the merchandise in question was the same in all material respects as the merchandise which was the subject of protest decided in *Standard Fruit Product Co.* v. *United States*, 23 Cust. Ct. 28 incorporated herein; that it is merchandise made in the same manner and used for the same purposes; and that the said merchandise is composed in chief value of bananas and is the product of the growth or manufacture of the Republic of Cuba. With this stipulation, counsel for both parties submitted. The record herein consists exclusively, so far as proof is concerned, of the incorporated case.

It will therefore be noted that we are called upon to review the record in this case as to whether or not the appellant made out a prima facie case in support of its protest and if so, whether it is entitled to prevail, with the sole testimony in the record being addressed to another protest which involves true, similar merchandise, but as will be pointed out, a materially different interpretation of paragraph 752.

The court in the incorporated case discussed the facts as well as the statutes in issue and decided that merchandise admittedly similar to that before us in this case was a paste. This is taken from the opinion therein, and reads:

> At the trial Paul R. Foote, president of The Standard Fruit Product Co., the importer, testified that he was familiar with the merchandise involved herein;

that it consisted of bananas, ripened naturally and artificially, sugar, and benzoate of soda (a preservative); that it is made in the following manner: That partially ripened and ripened bananas of a type known as "non-payable," because they cannot be exported profitably, are peeled, macerated through a "tomato pureer," and heated for about half an hour at 160 degrees; that while the bananas are cooking, 16½ per centum sugar is added together with about 5 per centum honey, some benzoate of soda, and a small amount of citric acid; that the mixture is cooled to about 100 degrees and canned; that the product is used principally by bakers and ice-cream manufacturers as flavoring; that the can contains about 78 per centum banana and 22 per centum something else. A sample of the merchandise was introduced into evidence as plaintiff's exhibit 1.

The only issue herein is whether or not the instant merchandise falls within the provision of paragraph 1618 covering bananas, green or ripe. Plaintiff claims that this provision is a more specific designation than that contained in paragraph 752, as modified, for fruit paste, and that the *eo nomine* provision for bananas, green or ripe, covers all forms of bananas.

Continuing, the court concluded:

Since the merchandise herein consists of a banana paste and not bananas in their natural state, we hold that it is properly dutiable at 14 per centum ad valorem under paragraph 752 of the Tariff Act of 1930, as modified by the trade agreement with Cuba, T. D. 50541, as fruit paste, the product of Cuba. The protest is overruled and judgment will be rendered accordingly.

It will be seen from the foregoing opinion that the question as to whether or not the merchandise was a prepared or preserved fruit was never advanced, nor was it discussed, although sufficient language was in the statute at the time to have justified the raising of such issue by the plaintiff if he cared so to do.

Looking now to the opinion of the trial court in this case, limited as we have pointed out to the meager record presented, the court again found the merchandise in question to be fruit paste or fruit pulp. Government counsel, during the oral argument of this appeal, stated that they were unable to convince themselves from the record as to the nature of the resulting product described therein. We have the same difficulty.

The assessment by the collector of the merchandise as fruit paste must stand unless the importer show that it was error. To do that, a prima facie case must be presented. Here, we would be required to accept the evidence in the incorporated record as sufficient for that purpose. We are unwilling to do that for what, in our opinion, are clear and convincing reasons.

Rule 20 of the United States Customs Court entitled, "Records Introduced in Evidence" provides, in part, as follows:

When a case is under consideration which involves questions of law and fact substantially the same in character as were involved in another case which has been previously decided, or tried, and submitted to the court for decision, the record, or any part thereof, in such previous case may, within the discretion of the court, be admitted in evidence in the pending case upon motion of either party: * * *

This rule was invoked by appellant in the instant case at the time of the trial resulting in the incorporation of the record to which we have herein before referred. It is assumed, therefore, that at the time of the incorporation of the record in the previously tried case, it was accepted that substantially the same questions of law and fact as before us in this case were before the court during the trial of the incorporated case. Such is not the case because of the change in the statute as pointed out, supra.

During the argument of this appeal, the incorporated case was referred to as being pertinent to the issues in this appeal solely for the purpose of showing the manner in which the merchandise was made. In other words, the manner in which the bananas were treated, as described in the incorporated record, is accepted as identical with the method used to produce the product in the instant case. There was no attempt made to identify the issues of law as similar.

We incorporate at this point the following from the opinion of the trial court as being pertinent to our discussion and showing as it does, differences in issues of law involved.

Plaintiff claims that the provision for bananas, prepared or preserved, is more specific and more limited in application than the provision for fruit pastes and fruit pulps, in that the former covers only bananas which have been prepared or preserved other than by drying, desiccating, or evaporating, while the latter covers a multitude of fruits, prepared by converting them into paste or pulp. The Government claims that the merchandise has been so processed that it has lost its identity as bananas and has become a new article, distinct in character and use from the article out of which it was made.

If the competing provisions were fruit, prepared or preserved, and fruit paste or pulp, it is clear that the instant merchandise would fall within the latter provision, or, if the provisions were bananas, prepared or preserved, and banana paste or pulp, the instant merchandise would fall within the latter provision. As between bananas, prepared or preserved, and fruit paste or pulp, it appears that the former embraces more varieties of bananas, prepared or preserved, than paste or pulp, and the latter embraces more varieties of fruit paste or pulp than banana paste or pulp.

Continuing, the court states:

* * * Following the reasoning in *K. Togasaki & Co.* v. *United States, supra,* we conclude that if Congress had contemplated that the phrase "fruits, prepared or preserved" included fruit pastes and fruit pulps, it would have been unnecessary to insert in paragraph 752 the words "fruit pastes and fruit pulps." Since Congress added this provision, it must be held to have been the congressional understanding that, without such addition, paragraph 752 would not have included fruit pastes and fruit pulps. Similarly, provisions for specified fruits, prepared or preserved, do not include paste or pulp made from such fruit.

In conclusion, the court said:

The product herein corresponds to the type of fruit paste or pulp which the court intimated would be classified under paragraph 752.

For the reason above stated, we hold that the merchandise involved herein is properly dutiable at 14 per centum ad valorem under paragraph 752 of the Tariff

Act of 1930, as modified by the exclusive trade agreement with Cuba, T. D. 51819, as fruit paste or fruit pulp. The protest is overruled and judgment will be rendered accordingly.

Obviously, it would serve no purpose for us to analyze further such a record, it being in our opinion inadequate to establish even closely a prima facie case.

The decision of the trial court is therefore *affirmed*.

JACKSON, J., retired, recalled to participate herein in place of WORLEY, J.