(C.D. 4045)

JAMES G. WILEY Co.
SELECT DIETARY PRODUCTS, INC. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 21, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov*, *Morris Braverman*, and *Patrick D. Gill*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: The merchandise involved in this protest, imported into the United States from Israel in May 1966, invoiced as "whole grapefruit flakes" and "whole lemon flakes", was assessed with duty at 15 per centum ad valorem under TSUS item 152.70 which provides for fruit pastes and fruit pulps. Plaintiffs contend that the grapefruit and lemon flakes are classifiable, respectively, as grapefruit and lemons, prepared or preserved, and, therefore, properly dutiable at 1.5 cents per pound under TSUS item 147.16, and at 1.25 cents per pound under TSUS item 147.20 which, in conjunction with their superior heading, cover grapefruit and lemons, fresh, or prepared or preserved.[1]

Defendant also claims, for the first time on the brief, but without abandoning the district director's classification, an alternative classification under TSUS item 152.05 as fruit flours, which takes a duty rate of 20 per centum ad valorem.

---

[1] An alternative claim for classification under TSUS item 182.30, which was not pressed at the trial or referred to in the brief, is deemed abandoned and hereby dismissed.

The relevant provisions of the tariff schedules are as follows:

Schedule 1, Part 9, Subpart C.

Fruit Flours, Peels, Pastes,
Pulps, Jellies, Jams,
Marmalades, and Butters

Defendant's
Alternative Claim    Fruit flours:

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

152.05                    Other _____ 20% ad val.

Classified                 Fruit pastes and fruit pulps:

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

152.70                    Other _____ 15% ad val.

Plaintiff's Claim

Schedule 1, Part 9, Subpart B.

Edible Fruits

Subpart B headnotes:
1. For the purposes of this part—

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

(e) the term *"prepared or preserved"* covers fruit which is dried, in brine, pickled, frozen, or otherwise prepared or preserved, but does not cover fruit juices (see part 12A of this schedule), or fruit flours, peels, pastes, pulps, jellies, jams, marmalades, or butters (see subpart C of this part), or candied, crystallized or glacé fruits (see subpart D of this part).

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Citrus fruits, fresh, or prepared or preserved:

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Grapefruit:

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

147.16          If entered during the period from November 1, in any year, to the following July 31, inclusive_____ 1.5¢ per lb.
147.20          Lemons _____ 1.25¢ per lb.

The quality controller in charge of the manufacturer's fruit drying department testified [2] that the merchandise is produced in the following manner:

---

[2] Direct and cross-interrogatories were propounded to him pursuant to commission.

> We take the fruit after it has been washed and put it into a machine called Disintegrator. From this machine the fruit is passed to the Juice Extractor, where about 20% of the juice is extracted from the fruit. Then the fruit from which the juice has been extracted is passed to a mill called Carborundum where it is ground to a very fine paste. From there the paste is passed through several pumps into a double drum dryer. There the paste is dried and it comes out in sheets and moved on to the Flaker. From the Flaker it moves on, untouched by human hands, into barrels containing polyethylene bags. The barrels are closed and shipped. * * *

> \* \* \* \* \* \* \*

> * * * As stated before, the whole fruit is disintegrated in the Disintegrator. The final product contains the whole fruit except for the 20% juice extracted in the Juice Extractor. We have found by experience that it is necessary to extract this amount of juice because if the fruit containing all the juice is dried, the final product becomes sticky.

The flaker "crumbles the sheet into flakes." The product is used in Israel for soft drinks and squashes by diluting the flakes and adding sugar and flavoring.

Representative samples of the lemon and grapefruit products (exhibits 1 and 2), which were taken from the shipment in issue, consist of small, dry, crumbly, light brown flakes.

In our opinion, plaintiffs have successfully discharged their dual burden of establishing that the classification is erroneous and their claimed classification is correct.

The first aspect of this case is the validity of the assessment of the fruit flakes as "other fruit pastes and fruit pulps". In the absence of a differing commercial designation or contrary legislative intent, neither of which is asserted here, words are to be construed according to their common meaning, which is a question of law for the court. *United States* v. *Mercantil Distribuidora, S.A., Joseph H. Brown*, 43 CCPA 111, C.A.D. 617 (1956). Is this merchandise either fruit paste or fruit pulp as those terms are commonly understood?

Paste and pulp have been defined as follows:

Websters New International Dictionary (1951 edition) :

> paste b. A smooth food product made by evaporation or grinding; as, almond *paste;* tomato *paste;* sardine *paste;* c. A confection made by evaporating fruit with sugar, * * *.

> pulp 2.a The soft, succulent part of any fruit; as, the *pulp* of a grape, orange, etc.

Funk & Wagnalls New Standard Dictionary (1942 edition) :

> paste 5. A confection made of fruit-juices, sugar, gum, etc.

> pulp 2. Specif.: (1) The soft succulent part of fruit; as, the pulp of grapes.

Samples, of course, are potent witnesses, *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958), and the court may, upon inspection of the official sample alone, set aside the classification "wherein the exercise of the senses and the application of common knowledge would sufficiently disclose an error in the assessment." *Waddell & Co.* v. *United States*, 3 Ct. Cust. Appls. 406, 408, T.D. 32989 (1912).

We find on the basis of the samples before us, that the dried flakes are neither fruit paste nor fruit pulp, within the common meaning of those terms, and that they were improperly classified.

Plaintiffs cite *Sardik, Inc.* v. *United States*, 8 Cust. Ct. 400, C.D. 646 (1942), and *United States* v. *A. Sahadi & Co., Inc.*, 23 CCPA 293, T.D. 48165 (1936), in support of their claim that the merchandise comes within the ambit of the superior heading for citrus fruit "prepared or preserved" which, by virtue of Subpart B headnote 1(e), *supra*, "covers fruit which is dried, in brine, pickled, frozen, or otherwise prepared or preserved, * * *."

In *Sardik*, dried banana flakes prepared by puréeing peeled ripe bananas in a pulper, then dehydrating the product in a drier, were assessed under paragraph 1558, Tariff Act of 1930, as nonenumerated manufactured articles, and claimed free of duty under the provision for green or ripe bananas in paragraph 1618. The court held that the claimed provision referred solely to bananas in their natural condition as taken from the tree; that the flakes were "nothing but ripe bananas which have been artificially dried"; and that they "would seem to come directly within" the provision of paragraph 752 of said act [3] for "Fruits * * * dried, * * * not specially provided for". The merchandise was held dutiable under that paragraph as amended by the trade agreement with Ecuador, T.D. 49710, which provided for "Bananas, dried, desiccated or evaporated".

In *Sahadi*, merchandise consisting of apricot paste or pulp which had been dried, smeared with olive oil, and rolled into a suitable form for a confection, was classified as apricots, dried, under the second provision of paragraph 735, Tariff Act of 1930, and claimed dutiable as apricots, otherwise prepared or preserved, not specially provided for, under the third provision of that paragraph or, alternatively, under paragraph 752 of said act as "fruit pastes and fruit pulps".

The court found that the product was something more than dried apricots and held that it was dutiable under paragraph 735 as apricots prepared or preserved. The court stated:

---

[3] Paragraph 752 provides for "Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for. * * *"

The contention that the merchandise is not apricots, dried, in a tariff sense, is supported, we think, by a consideration of the fact that if the paste or pulp which was spread on the board had been shipped to this country in an undried condition, it is probable that it would not have been dutiable under paragraph 735, but would have found classification as a paste or a pulp under paragraph 752, although it, in fact, was apricots prepared or preserved. A subsequent drying would not make the product dried apricots, but dried paste or pulp. There is no *eo nomine* provision for dried pastes or pulps, but unquestionably the apricots from which the involved preparation was made had been prepared or preserved otherwise than by drying, desiccating or evaporating and, therefore, the involved merchandise aptly responds to the last provision of said paragraph 735. The legislative history suggests that although Congress understood apricot paste or pulp to be prepared or preserved apricots, it intended that such pulp or paste should be dutiable under paragraph 752. There is nothing therein, however, which indicates an intent to require that apricots which had been processed into a paste or a pulp, which was subsequently dried, should find dutiable classification elsewhere than in the last provision of paragraph 735.

In *Inter-American Shipping Co.* v. *United States*, 27 Cust. Ct. 104, C.D. 1355 (1951), affirmed, *Id.* v. *Id.*, 40 CCPA 100, C.A.D. 504 (1952), merchandise consisting of cooked macerated bananas, sugar, honey, and benzoate of soda, which was classified under paragraph 752, *supra*, as fruit paste or pulp, was claimed dutiable under that paragraph, as modified, as bananas, prepared or preserved in any way other than by drying, desiccating or evaporating. The court affirmed the classification, stating:

> It appears that fruit pastes and fruit pulps were generally held to fall within the provisions for fruits, preserved in their own juices, rather than those for fruits, prepared. Paragraph 752 of the Tariff Act of 1930, however, omitted the provision for fruits, preserved in their own juices, and added a provision for fruit pastes and fruit pulps. Following the reasoning in *K. Togasaki & Co.* v. *United States, supra*, we conclude that if Congress had contemplated that the phrase "fruits, prepared or preserved" included fruit pastes and fruit pulps, it would have been unnecessary to insert in paragraph 752 the words "fruit pastes and fruit pulps." Since Congress added this provision, it must be held to have been the congressional understanding that, without such addition, paragraph 752 would not have included fruit pastes and fruit pulps. Similarly, provisions for specified fruits, prepared or preserved, do not include paste or pulp made from such fruit.

The court also observed, citing the aforequoted passage in *Sahadi*, *supra*, that—

> The product herein corresponds to the type of fruit paste or pulp which the [appellate] court intimated would be classified under paragraph 752.

The foregoing cases indicate that a commodity may be designated as fruit preserved or prepared not withstanding it has lost its original form, or even its identity as the natural fruit. See also *Stone & Co.* v. *United States*, 7 Ct. Cust. Appls. 173, T.D. 36492 (1916) ; *Curtice Bros. & Co.* v. *United States*, 5 T.D. 719, T.D. 23987–G.A. 5205 (1902). We are unable to discern (and recourse to legislative history does not aid us) what defendant asserts is the "obvious intent of Headnote 1(e), *supra*," to exclude products such as the fruit flakes at bar from the provision for prepared or preserved fruits. "The courts", as Judge Watson stated in *Armbee Corporation, W. J. Byrnes & Co., Inc.* v. *United States*, 60 Cust. Ct. 105, C.D. 3278, 279 F. Supp. 438 (1968), "are bound to determine the intent of Congress by the language which was actually used and have no right to give any meaning to such language other than that conveyed by the words, terms, or expressions in which the legislative will was expressed."

Accordingly, in the absence of a showing of exclusionary intent, we find that the superior heading, "Citrus fruits, fresh, or prepared or preserved", embraces the merchandise at bar.

We do not agree with defendant's contention that it was "plaintiffs' burden to establich [sic] *prima facie* that the instant merchandise is not a 'fruit flour', * * *" (brief, page 6). The classifying officer is presumed to have found every fact to exist that was necessary to sustain his classification. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75 (1939). Schedule 1, Part 9, Subpart C provides separately for fruit flours, peel, pastes and pulps, jellies, jams, marmalades, and butters. Therefore, in classifying the merchandise as fruit pastes and pulps, the district director presumptively found that they were not fruit flours, peel, or the other commodities named in that part. Obviously, it was not incumbent upon plaintiffs to negate a point that was never in issue. The burden, rather rested upon defendant to prove the applicability of item 152.05 if it desired to make such counterclaim. *James A. Wiley Co., a/c J. R. Bateman* v. *United States*, 62 Cust. Ct. 257, C.D. 3738, 296 F. Supp. 955 (1969).

In support of its alternative claim as fruit flours, defendant relies solely on the argument that the flakes are "within the common meaning of the term fruit flour" (brief, page 8). The dictionary definitions cited by defendant, and by plaintiffs in their reply brief, indicate that the term "flour" refers to a finely ground or powdery substance. In short, it denotes a material unlike the merchandise at bar in appearance and texture. However, we do not pass upon this recently raised claim which plaintiffs have had no opportunity to refute in court, as it constitutes new matter which is outside the scope of the issues as framed by the district director's classification and the protest, and as presented on the record herein.

For the foregoing reasons, we hold the grapefruit flakes and lemon flakes to be properly dutiable at 1.5 cents per pound under TSUS item 147.16, and at 1.25 cents per pound under TSUS item 147.20, respectively. The claim under TSUS item 182.30 is dismissed.

Judgment will be entered accordingly.