(C.D. 4242)

WEST COAST CYCLE SUPPLY CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 30, 1971)

*Stein & Shostak* (*Leonard M. Fertman* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Patrick Gill* and *Michael M. Hunter*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge; RICHARDSON, J., concurring in part and dissenting in part

ROSENSTEIN, Judge: The merchandise involved in the consolidated protests herein consists of bicycle padlocks stipulated to be of base metal, not of cylinder or pin tumbler construction, classified under TSUS item 646.81 as padlocks over 1.5 but not over 2.5 inches in width, and claimed to be classifiable under TSUS item 646.80 as padlocks not over 1.5 inches in width. Thus, the sole issue is the "width" of the padlocks.

The competing provisions of the Tariff Schedules of the United States are as follows:

Locks and padlocks (whether key, combination, or electrically operated), luggage frames, incorporating locks, all the foregoing, and parts thereof, of base metal; lock keys:
    Padlocks:
        Not of cylinder or pin tumbler construction:
646. 80            Not over 1.5 inches in width _____   12¢ per dozen +8% ad valorem; rate reduced to 10.8¢ per d o z e n +7% ad valorem on merchandise entered after December 31, 1967 and before January 1, 1969.

646. 81          Over 1.5 but not over 2.5
inches in width_____   18¢ per dozen +8% ad valorem; rate reduced to 16¢ per d o z e n +7% ad valorem on merchandise entered after December 31, 1967 and before January 1, 1969.

Exhibits 1 through 5, offered as illustrative and representative of padlock model numbers CL 241, XCL 241, CL 361, XP 36, CL 240, GP 36, and MC 36 herein, are cylindrically shaped [1] combination padlocks which lock by inserting the smaller "shackle-connecting piece" into the larger part of the padlock which carries the combination numbers. A cable or chain is attached at each end of the cylinder. It was stipulated with respect to these models—

> * * * that a measurement taken between points where the chains or cables enter the locks at either end thereof is over 1½ inches but not over 2½ inches, and that such measurement includes the shackle-connecting piece; and, further, that a measurement taken at right angles to the heretofore stated measurement is not over 1½ inches.[2] [R. 18–19.]

Exhibit 6, which is representative of models X 36/CC and 55/CC, operates in the same manner as the other exhibits and has the combination numbers on the face of the larger portion of the lock. However, it is roughly "L" shaped in design with each leg or extension of the "L" profile measuring approximately two inches. Each leg at its thickest point measures under 1.5 inches. A cable is attached to each end of the "L"; the diagonal measurement between the two points where the cable is connected is approximately 2¼ inches.

Defendant claims that the "shackle-to-shackle" measurement used by the district director herein, i.e., the straight-line distance between the two points where the cable or chain is attached to the padlock, should be considered the "width" for tariff purposes regardless of the lock's actual shape or design. The basis for this claim is that, as neither the Tariff Schedules, the legislative history, nor prior case law provides any guidelines for determining the "width" of padlocks, shackle-to-shackle measurement offers "the most correct and uniform determination of the dimensions of padlocks for tariff classification purposes."

---

[1] The stipulation that the padlocks are not of cylinder or pin tumbler construction refers only to the lock mechanism and not to the shape or configuration of the articles.

[2] As an illustration of their dimensions, exhibit 5, the largest padlock, measures approximately 2½ inches between the cable-attached ends, and the largest measurement taken at right angles thereto is slightly over ¾ inch.

Plaintiff contends that the "width" of a lock is dependent upon its actual dimensions; and that the district director erroneously measured the "length" or "longest straight-line dimension" of the articles at bar rather than their width, which is the measure taken from "side to side" at right angles to the length.

Words used in a tariff statute are to be construed in accordance with their common meaning unless a differing commercial designation is established or the intention of Congress is otherwise expressed. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958) ; *Armand Schwab & Co., Inc.* v. *United States*, 32 CCPA 129, C.A.D. 296 (1945). In ascertaining common meaning, which is a matter of law for the court to decide, the court may consult standard lexicographic definitions. *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388 (1948) ; *Mitsugi Higashi* v. *United States*, 64 Cust. Ct. 25, C.D. 3954 (1970) ; *Jeffrey Martin, Inc.* v. *United States*, 62 Cust. Ct. 533, C.D. 3821 (1969).

"Length" and "width" are defined in various standard lexicons as follows :

*Funk & Wagnalls New Standard Dictionary of the English Language*, 1942 :

> length 1. Extension from end to end; the greatest dimension of a body; longitudinal extent: opposed to *breadth* and *thickness*.
>
> width 1. Space between sides, or extent from side to side, breadth; as, the *width* of the river is two miles; * * *

*Webster's New International Dictionary*, Second Edition, 1958 :

> length 1.a The longest, or longer, dimension of any object, in distinction from *breadth* or *width;* extent from end to end; the longest straight line that can be drawn through a body parallel to the general direction of its sides; * * *
>
> width 1. The dimension of an object measured across from side to side or in a direction at right angles to the length; * * *

*The Winston Dictionary*, 1957 :

> length 1, the measure of an object from end to end, or along its longest dimension; * * *
>
> width, the extent of a thing from side to side; breadth; opposite of *length.*

The foregoing definitions comport with the general understanding of those terms.

Whether the cylindrically shaped [3] padlocks at bar are considered to have two straight-line dimensions (length and width) or three straight-line dimensions (length, width and thickness), it is clear

---

[3] "Cylinder" is defined in *Funk & Wagnalls New Standard Dictionary, supra,* as follows : 2. *Mech.* Any cylindrical portion of a machine, especially if hollow, and proportioned so that the length somewhat exceeds the diameter. * * *

that their classification as padlocks over 1.5 but not over 2.5 inches in width was based upon their longest dimension, that is, their length. As this is the only dimension which exceeds 1.5 inches, the articles were erroneously classified.

The "L" shaped models, as represented by exhibit 6, are more difficult to measure in terms of "width". However, we do not think that the longest straight-line dimension (the diagonal distance between the two ends of the "L") represents its "width", as defendant contends. The "width", in this instance, is the measurement taken from side to side of, or at right angles to, the "length" of the "legs" which form the "L" profile. This measurement, taken at its widest point, is well under 1.5 inches. Therefore, the classification of these models was also in error.

Perhaps adoption of a "shackle-to-shackle" measurement would ease the lot of the classifying officer, but "the courts are bound to determine the intent of Congress by the language which was actually used and have no right to give any meaning to such language other than that conveyed by the words, terms, or expressions in which the legislative will was expressed." *Armbee Corporation, W. J. Byrnes & Co., Inc. v. United States,* 60 Cust. Ct. 105, 110, C.D. 3278, 279 F. Supp. 438 (1968). See *James G. Wiley Co., Seelect Dietary Products, Inc. v. United States,* 65 Cust. Ct. 12, C.D. 4045 (1970). Affirmance of the measurements used by the district director to classify the merchandise herein would do violence to, and be at variance with, the common meaning of the term "width".[4]

Furthermore, we find no basis to support the government's arbitrary application of such measurements, irrespective of shape or design, to all padlocks classifiable under the competing provisions herein. Contrary to defendant's assertion, there is not a scintilla of evidence in the record that the "shackle-to-shackle" measurement used herein represents either a uniform or long-continued administrative practice. Indeed, while long-continued administrative practice has been held by our appellate court to be of great weight, "it is well-settled law that such rule of construction may not be invoked where the statute itself, as here, is clear and unambiguous". *Armand Schwab & Co., Inc. v. United States, supra,* at page 129.

The claim for classification under TSUS item 646.80 is sustained and judgment will be entered accordingly.[5]

---

[4] Measurement of the "width" of articles may vary somewhat dependent upon their particular shape or configuration. We are concerned herein solely with padlocks of the general shape and design represented by the exhibits of record.

[5] It appears from the official papers in protest 67/80473 that the entry was liquidated within 60 days after appraisement. Since no appeal for reappraisement has been filed and the time therefor has expired, the liquidation remains valid. *John V. Carr & Son, Inc. v. United States,* 66 Cust. Ct. 316, C.D. 4209 (1971).

CONCURRING IN PART

AND

DISSENTING IN PART

RICHARDSON, Judge: I concur in the opinion of the majority in all of the involved protests except protest 67/80473 covering entry 67 271468. I dissent from the majority in this protest because the liquidation was not based on a "final appraisement."

According to a footnote in the majority opinion the official papers in protest 67/80473 indicate the entry was liquidated within 60 days after appraisement, but since no appeal for reappraisement has been filed and the time therefor has expired, the majority considers the liquidation valid under the case of *John V. Carr & Son, Inc.* v. *United States*, 66 Cust. Ct. 316, C.D. 4209 (1971).

This is a 1967 protest, and, according to Title I, Section 122 of The Customs Courts Act of 1970, it is governed by the law in effect prior to October 1, 1970. The liquidation in this protest was 44 days after the appraisement, and as such was premature and void. The law in effect prior to October 1, 1970 as declared by the Court of Customs and Patent Appeals, and by this court in an unbroken chain of decisions, is that liquidation of an entry prior to the expiration of the 60 days after appraisement in which the collector or district director might appeal for reappraisement is not upon a "final appraised value," is premature and void, and a protest against such liquidation must be dismissed as premature. *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233 (1936). See also: *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T.D. 46559 (1933), *Biddle Purchasing Co., et al.* v. *United States*, 69 Treas. Dec. 880, T.D. 48320 (1936), *Ti Hang Lung & Co.* v. *United States*, 3 Cust. Ct. 268, C.D. 248 (1939), and *The New Home Sewing Machine Co.* v. *United States*, 62 Cust. Ct. 895, R.D. 11655 (1969). There can be no "final appraised value" until either the right of appeal has been exhausted, or the statute of limitations has run against such appeal. Only then can there be a legal liquidation.

The Second Division in the case of *John V. Carr & Son, Inc.* v. *United States*, C.D. 4209 (April 29, 1971), takes the position that the Court of Customs and Patent Appeals in using the word "void" to characterize a liquidation made prior to the expiration of the 60 days allowed for an appeal for reappraisement didn't really mean "void" but meant "voidable"; that it is legally wrong for the district director to liquidate prior to the expiration of the 60 days within which he may appeal, but his illegal act is merely "voidable," and the blemish of illegality in not waiting for a "final appraisement" before

liquidating is automatically wiped off by the expiration of the 60 days without the district director filing an appeal for reappraisement.

The premature liquidation was not an act which the collector or district director had the power to perform, but performed in an improper manner as the Court of Customs and Patent Appeals held the facts to be in the case of *Joseph Fischer* v. *United States*, 38 CCPA 143, 150, C.A.D. 452 (1951). The collector or district director had no power to liquidate until there was a "final appraisement," that is, after the 60 days for appeal had expired. Even that case made a distinction between what is merely "erroneous" and thus "voidable" and what is "illegal" and thus "void."

The opinion in the *Carr* case, *supra*, does not cite any cases holding that a collector or district director may make a premature liquidation in contravention of the statute, 19 U.S.C.A., section 1503 (Section 503 of the Tariff Act of 1930), as amended, which provides:

> "(a) Except as provided in section 1562 of this title (relating to withdrawal from manipulating warehouses), the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the *final appraised value*." [Emphasis added.]

It has been judicially determined that an appraised value becomes final upon the expiration of a 60-day period absent the filing of an appeal for reappraisement. Also, the collecting officer cannot liquidate until the appraisement has become a "final appraised value."

Whereas the opinion in the *Carr* case, *supra*, does not expressly state that the district director may waive the 60 day period within which he may appeal, the opinion implies as much.

The argument that the collector or district director be regarded as having waived his right to appeal by a premature liquidation was exploded in *Lawrence Groom & Co.* v. *United States*, 64 Treas. Dec. 119, T.D. 46559 (1933), where the collector liquidated an entry eleven days after the appraiser's report and thereafter filed an appeal for reappraisement on the fifty-ninth day. The court in permitting him to appeal for reappraisement did not regard the premature liquidation as a waiver of his right to appeal. The court at page 121 said:

> ". . . The collector in this case had no appraised value upon which he could *legally* assess duty until after the 60-day period after the appraiser's return, within which he was authorized to file an appeal for a reappraisement, had expired." [Emphasis added.]
>
> *       *       *       *       *       *       *
>
> "It is not within the power of the collector to destroy the authority granted him by Congress of filing an appeal for a reappraisement by liquidating an entry during the time within

which he is authorized to file an appeal for a reappraisement of the merchandise. *The collector cannot destroy a legal right by the doing of an illegal act.*" [Emphasis added.]

A waiver means to irrevocably relinquish a right that is beneficial to the individual. A person cannot make a waiver of a right and then later say "I have changed my mind. I take the waiver back." The 60-day period within which the collector or district director may appeal is not a personal right or privilege to waive, but a right given the collector or district director on behalf of the United States Government to determine within a 60-day period whether in the public interest an appeal for reappraisement should be taken. He cannot shorten this 60-day period by a premature liquidation.

In the *Biddle Purchasing Co., et al* case, *supra*, the majority of the court also rejected the contention that a liquidation prior to the expiration of the 60-day period constitutes a waiver of the 60-day waiting period for the appraisement to become final.

The Second Division, in its opinion in the *Carr* case, *supra*, states that in the *Biddle* case, *supra*, ". . . where no appeal was filed, the appraisement was not held void." The issue in the *Biddle* case, *supra*, was not whether the appraisement was void, but whether the liquidation was void. The court had the following to say on this issue, at pages 885 and 886 of its opinion:

"It was only after sixty days from the date of the appraiser's report that the appraised value became final. Any liquidation made prior to the time when the appraisement becomes final is *void and without any force or effect. Such has been the holding of this court and the appellate court.*" (Emphasis added).

\* \* \* \* \* \* \*

". . . On March 23, 1936, in *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233, [the Court of Customs and Patent Appeals did] hold that the attempted liquidation of the entry prior to the expiration of the time within which to appeal for reappraisement was properly held by the trial court and the division to be *null and void.*

"On the facts in the case at bar we so hold." (Emphasis added).
At page 885.

\* \* \* \* \* \* \*

". . . The date on which final appraisement became valid was provided for under existing law. Therefore the liquidation in question, having been made prior to the time allowed by law, viz, sixty days, when the appraisement became final, and during which period the collector had the right to appeal, was invalid.

"*We therefore hold the liquidation of the entries covered by these protests null and void, and of no force and effect.* The protests are sustained." (Emphasis added).
At pages 885–886.

The headnote in the *Biddle* case, *supra*, at page 880 also states:

"A liquidation made prior to the expiration of the sixty days allowed by law to the collector within which to appeal for reappraisement is *void*, as the appraisement by the appraiser does not become final and conclusive until such time has expired." (Emphasis added).

Admittedly a headnote is no part of the decision in a case, but in this instance it does succinctly and accurately capsule the opinion.

The Customs Courts Act of 1970, effective October 1, 1970, changes the administrative procedure in appraisement and liquidation, but the same Act limits this court to applying the law in effect prior to October 1, 1970, in deciding protests, the trial of which began prior to October 1, 1970 (Title I, Section 122 of The Customs Courts Act of 1970). This protest was tried prior to October 1, 1970.

The liquidation herein is null and void by reason of its prematurity, and the protest filed herein against such void liquidation is premature, and must, therefore, be dismissed.